**NEW ENGLAND MERCHANTS NATIONAL BANK, Plaintiff,**

v.

**IRAN POWER GENERATION AND TRANSMISSION COMPANY et al., Defendants.**

**79 Civ. 6380 (KTD).***

United States District Court, S. D. New York.

June 4, 1980.

74

* And the following Cases:

| | | |
|---|---|---|
| 79 Civ. 6035 GLG | 79 Civ. 6475 WK | 79 Civ. 6867 RWS |
| 79 Civ. 6115 WCC | 79 Civ. 6480 RJW | 79 Civ. 6933 PNL |
| 79 Civ. 6116 RJW | 79 Civ. 6483 HFW | 79 Civ. 7035 CBM |
| 79 Civ. 6117 TPG | 79 Civ. 6484 RWS | 80 Civ. 0033 WCC |
| 79 Civ. 6188 VLB | 79 Civ. 6485 RWS | 80 Civ. 0078 EW |
| 79 Civ. 6195 LPG | 79 Civ. 6486 LWP | 80 Civ. 0098 GLG |
| 79 Civ. 6196 LPG | 79 Civ. 6488 GLG | 80 Civ. 0233 LFM |
| 79 Civ. 6276 PNL | 79 Civ. 6489 MEL | 80 Civ. 0241 RWS |
| 79 Civ. 6279 LPG | 79 Civ. 6493 EW | 80 Civ. 0406 RWS |
| 79 Civ. 6312 HFW | 79 Civ. 6497 RLC | 80 Civ. 0512 ADS |
| 79 Civ. 6331 TPG | 79 Civ. 6508 LPG | 80 Civ. 0560 WCC |
| 79 Civ. 6344 HFW | 79 Civ. 6512 LFM | 80 Civ. 0570 CES |
| 79 Civ. 6362 HFW | 79 Civ. 6525 LPG | 80 Civ. 0791 PNL |
| 79 Civ. 6364 PNL | 79 Civ. 6587 TPG | 80 Civ. 0838 LWP |
| 79 Civ. 6369 LFM | 79 Civ. 6588 VLB | 80 Civ. 0933 EW |
| 79 Civ. 6371 GLG | 79 Civ. 6606 WK | 80 Civ. 0989 HFW |
| 79 Civ. 6376 HFW | 79 Civ. 6620 CBM | 80 Civ. 1097 CLB |
| 79 Civ. 6412 WCC | 79 Civ. 6644 TPG | 80 Civ. 1099 LPG |
| 79 Civ. 6413 CES | 79 Civ. 6693 GLG | 80 Civ. 1432 LBS |
| 79 Civ. 6414 CSH | 79 Civ. 6696 GLG | 80 Civ. 1520 CES |
| 79 Civ. 6415 RWS | 79 Civ. 6709 JMC | 80 Civ. 1679 VLB |
| 79 Civ. 6416 CSH | 79 Civ. 6714 KTD | 80 Civ. 1680 VLB |
| 79 Civ. 6429 CLB | 79 Civ. 6714 KTD | 80 Civ. 1681 VLB |
| 79 Civ. 6430 RO | 79 Civ. 6748 LWP | 80 Civ. 1744 HFW |
| 79 Civ. 6434 RJW | 79 Civ. 6749 LWP | 80 Civ. 1897 RWS |
| 79 Civ. 6440 LBS | 79 Civ. 6810 MEL | 80 Civ. 1920 ADS |
| 79 Civ. 6461 KTD | 79 Civ. 6831 VLB | 80 Civ. 1953 LBS |
| 79 Civ. 6467 HFW | 79 Civ. 6835 WCC | 80 Civ. 1980 KTD |
| 79 Civ. 6468 CBM | 79 Civ. 6840 EW | 80 Civ. 2360 LWP |
| 79 Civ. 6470 LWP | 79 Civ. 6860 CSH | |

OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge.

The Iranian crisis! Demonstrations! Hostages! Diplomatic Ties Broken! The Aborted Rescue Attempt! These have been the headlines for most of the past year. Paralleling these events, however, are other less dramatic problems which must be solved in a dispassionate manner, one based in law and logic. This court must, thus, reject entirely the blatant jingoist appeals to emotionalism offensively put forth by at least one attorney involved in these proceedings. It is with a sense of deep sadness that I must remind even one person that this is a court of law and of justice.

The volatile political situation in Iran together with the break in the long-standing economic and industrial contacts between American businesses and the Iranian government, its agencies, instrumentalities, as well as private Iranian corporate entities, have caused a flood of lawsuits to be filed in this and other circuits. These suits, commercial in nature, seek monetary damages for alleged civil wrongs ranging from the nationalization of private property to the repudiation of executory contracts.

In the vast majority of the suits in federal courts in this state, [hereinafter collectively referred to as the "Iranian cases"], the plaintiffs have sought, and obtained, orders of attachment pursuant to New York's attachment statute, N.Y.Civ. Prac.Law §§ 6201 *et seq.* (McKinney 1979), with respect to the monies of the several defendants found within this state. Since many of these attachments were obtained *ex parte*, the plaintiffs are compelled to seek judicial confirmation thereof. *Id.* at § 6211.

In light of the threshold questions of fact and law which are common in these actions, judicial economy dictated that at least insofar as these common questions were concerned, a joint confirmation hearing be held. Thus, these actions have, for the most part, been referred to me for purposes of conducting the joint confirmation hearing.

Numerous administrative and procedural problems have attended this joint confirmation hearing which was held on April 29, 1980. I turn now to consider yet another

simple procedural problem which, by virtue of the nature of the Iranian cases, has been rendered terribly complex—service of process.

The question of service of process presents two quite distinct problems in the context of these cases. The first problem involves the time within which process must be served. The second, and concededly the more difficult problem, is the manner in which process is to be effected.

There is no federal attachment statute, *per se*, which obtains in the normal commercial litigation. Instead, Rule 64 of the Federal Rules of Civil Procedure provides:

At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought.

Thus, under Rule 64, the provisions of New York's attachment statute control, [hereinafter "the attachment statute"]. These recently amended provisions, codified in Article 62 of the New York Civil Practice Law and Rules, set forth the exclusive method for obtaining an attachment in New York. However, the question remains whether each and every provision of the attachment statute, particularly those of a purely procedural nature, must be applied in a federal action. I think not.

There are two explicit exceptions to the otherwise slavish application of a forum state's provisional remedies. The one exception which is germane to the instant actions provides that although the provisional remedies are available "under the circumstances and in the manner" provided under state law, the action in which the remedy is used is to be "commenced and prosecuted" pursuant to the Federal Rules of Civil Procedure. Fed.R.Civ.P. 64(2).

Section 6213 of the attachment statute provides, in pertinent part:

An order of attachment granted before an action is commenced is valid only if, within sixty days after the order is granted, a summons is served upon the defendant or first publication of the summons against the defendant is made pursuant to an order and publication is subsequently completed.

There have been numerous factors which have impeded service upon the defendants within the time provided in § 6213. These include: the political climate in Iran, including what appears to be a breakdown in the postal service of Iran; the severance of diplomatic relations between Iran and the United States and its concomitant tension and almost total lack of cooperation; and, the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.*, which the defendants claim provides the "exclusive" method by which the government of Iran, its agencies and instrumentalities, are to be served with process in a commercial litigation.

These factors have combined to render compliance with the 60 day service of process requirement virtually impossible.

It would appear, at first blush, that federal Rule 64 might require that service of process be perfected within 60 days after the order of attachment is signed or, failing that, the attachment will fall. A closer reading of Rule 64, however, compels a different conclusion.

Section 6213 contemplates the issuance of an order of attachment prior to the "commencement" of the action which, under New York law, is "commenced" by service of a summons upon the defendant. N.Y.Civ.Prac.Law § 304 (McKinney 1979). However, Rule 64 permits an attachment to issue in a federal action, whether it be based upon diversity or federal question jurisdiction, only upon commencement of the suit. And, under the federal rules, a civil action is commenced by filing a complaint with the court. Fed.R.Civ.P. 3. Thus, it is legally and factually impossible to obtain a pre-commencement order of attachment in federal court. *Cf. Miller v. Gillette*, 267 F.2d 783 (2d Cir. 1959) (per curiam), *cert. denied*, 362 U.S. 922, 80 S.Ct.

676, 4 L.Ed.2d 742 (1960); *Lloyd v. Lawrence,* 60 F.R.D. 116, 120 (S.D.Tex.1973). *See also* Moore's Federal Practice ¶ 64.05 at 64-21-64-22 (2d ed. 1979).

■ Moreover, in order to dispel any doubt about when a federal attachment action is commenced, Rule 64 expressly provides that the Federal Rules of Civil Procedure shall govern the commencement of the action. Thus, since Rule 64 effectively preempts New York's attachment statute, at least insofar as it carves out the availability of a pre-commencement attachment, it is evident that the time requirements of § 6213 are of no force and effect in a federal attachment action.

■ Accordingly, if plaintiffs perfect service upon defendants more than 60 days after the orders of attachments were signed, the attachment will not automatically fall. This is not to say, however, that the time within which defendants are to be served is open ended. Indeed, the dictates of due process require that since the assets of the defendants are attached, they must have actual notice of the attachment within a reasonable time. *Cf. Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

Admittedly the concept of timely notice is somewhat less compelling in the cases at bar since all the Iranian assets which are the subject of the several suits before me have been frozen *via* Presidential order. *See* Exec.Order No. 12170, 44 Fed.Reg. 65,-729 (1979). As a practical matter, the defendants are well aware that their assets are not only presently frozen, but are also the subject of the instant attachments. In any event, the question of notice will be more fully developed below.

I turn next to consider the manner in which defendants are to be served with notice of the pending law suits.

The vast majority of the cases before me name the State of Iran or the Islamic Republic of Iran as defendant. In addition, numerous other named defendants claim to be either agencies or instrumentalities of the Iranian government. Most of the defendants seek refuge under the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* [hereinafter "FSIA"]. Passing at this juncture the question of whether or not the FSIA immunizes these defendants from pre-judgment attachment, an issue I will discuss in a later opinion, I am concerned only with the question of service under the provisions of the FSIA.

The act provides, in pertinent part:

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a

certified copy of the diplomatic note indicating when the papers were transmitted.

. . . . .

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608.

Plaintiffs have moved for an order directing that a substitute form of service be permitted. They argue, in essence, that the present political situation in Iran together with the severance of diplomatic relations between the United States and Iran has rendered service under the terms of the FSIA impossible.

Defendants counter that the FSIA provides the exclusive method by which process may be served and no substitute form of service is permitted. They reason that Congress, certainly aware of the possibility of international conflict, intentionally made no provision for service under such circumstances. They conclude that Congressional silence can only mean that the provisions of the FSIA were to be the exclusive method by which process was to be served upon a foreign government, its agencies or instrumentalities, regardless of the political situation.

On balance I must conclude that a substituted form of service is not precluded under the FSIA and, in fact, is authorized under the Federal Rules of Civil Procedure.

I need not recite the present political situation in Iran. It is enough to note that the efforts of plaintiffs to serve under the provisions of the FSIA have been fruitless. The major stumbling block has been that despite the numerous mailings of the pleadings to the defendants in Iran, there have been a paucity of receipts signed by authorized Iranians and returned by the Iranian postal service to the United States as required under the FSIA.

With respect to the Iranian agencies or instrumentalities, the Act provides that if the other methods of service are unavailable, the court may fashion a mode of service "consistent with the law of the place where service is to be made." The problem here is not whether a substitute form of service is permitted, but rather ascertaining the law of Iran so that service may be effected in conformity therewith. The parties have been unable to provide the court with a definitive statement with respect to the present state of Iranian law.[1]

■ The language in the FSIA requiring that the mode of service fashioned by the

---

1. Even counsel for the defendants seems unsure of the meaning of what might be a nationalization decree or the effect and extent of that decree, if it is indeed a nationalization decree.

(See minutes of separate hearing in *Atlantic Richfield Co. v. Lavan Petroleum Co.*, dated May 16, 1980).

court be "consistent" with the law of the foreign state, does not require that service be identical to the method prescribed by the foreign state. Rather, the language indicates that the mode of service authorized by the court should not be prohibited under the law of the foreign state. H.R.Rep.No. 94–1487, 94th Cong., 2d Sess. at 25 (Sept. 9, 1976), reprinted, 1976 U.S.Cong. Code & Admin.News, pp. 6604, 6624. Thus, if a mode of service is not prohibited under Iranian law, and is a means whereby those in charge of the defendant agencies or instrumentalities would receive notice of the action and an adequate opportunity to defend it, then a substitute form of service is permissible under the FSIA.

The question of service upon the State of Iran, however, is not so easily resolved. The FSIA provides four methods of service upon a foreign state, none of which expressly authorize a substitute form of service to be fashioned by the court. However, the final mode of service calls for the transmission of process through diplomatic channels.

This fourth method of service—a method of last resort—provides that a copy of the pleadings be delivered to the Secretary of State in Washington, D.C., who shall, in turn, transmit the pleadings through diplomatic channels to the foreign state. After the transmission, the Secretary of State is directed to provide the Clerk of the Court with a certified copy of the diplomatic note sent to the foreign state. At this point service is complete.

It is important to note that while under all other modes of service upon a foreign state the plaintiffs must receive a signed receipt from an authorized official of the foreign government before service is complete, under this fourth method of service no signed receipt need be filed to complete service. Compare § 1608(c)(1) with § 1608(c)(2). This is also true with respect to a mode of service fashioned by the Court upon an agency or instrumentality of a foreign state under § 1608(b)(3)(C). It would appear, therefore, that this final method of service through diplomatic channels was intended to serve the same purpose as the substitute service provision in the section dealing with the agencies or instrumentalities of a foreign state.

■ The only logical conclusion to be drawn is that Congress did not seek to cover the problem of effecting service upon a foreign government should diplomatic channels be closed. Indeed, not only is the statute silent in this regard, but the legislative history does not address the point. Under these circumstances, I am unwilling to adopt defendants' theory that Congressional silence constitutes a total prohibition or requires judicial abstinence. It is quite often the function of a judge to reconcile specific legislation to the particular facts of a case which Congress failed to specifically contemplate in enacting the legislation. Thus, I find nothing in the FSIA, or the legislative history of the Act, which prohibits a court from recognizing a mode of service of process when all other prescribed methods have been frustrated.

Having concluded that the FSIA does not itself bar formulation of a substitute mode of service, I now consider those provisions of the federal rules which permit a court to fashion a mode of extraterritorial service.

Rule 4 of the Federal Rules of Civil Procedure provides in subdivision (e):

Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.

The rule further provides, in subdivision (i) that

When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign

country, it is also sufficient if service of the summons and complaint is made: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or (C) upon an individual, by delivery to him personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (E) as directed by order of the court.

■ Extraterritorial service of process upon the Iranian government, its instrumentality and agency, is clearly authorized under the FSIA. And, since there is nothing contained in the FSIA restricting the court's otherwise unfettered authority under Rule 4(e) and (i) of the Federal Rules of Civil Procedure to fashion a mode of service upon those not found within the United States, I find that under the present circumstances such service is proper.[2]

There is no question that some plaintiffs have attempted to effect service in accordance with the methods prescribed in the FSIA. Their efforts have been frustrated by forces beyond their control and which are, to some extent, within the control of a number of the defendants. Many plaintiffs have expended their best efforts to effect service under the FSIA. Any hopes of compliance with the formalisms of the statute, however, have been effectively dashed by the recent severance of direct diplomatic relations between the United States and Iran. To be sure, absent such direct diplomatic ties, a situation not contemplated by the FSIA, compliance with the exact words of the statute is impossible.

The problem with which I must deal is not the niceties of the statute, but whether adequate notice of the action has reached the defendants. The State of Iran, its agencies and instrumentalities have appeared, albeit specially, through counsel. I have been informed by their counsel that they appear only for purposes of the joint confirmation hearing and are not authorized to accept process on behalf of their clients. This is true despite the fact that while not conceding effective service of process, counsel, in an attempt to enlarge the time within which defendants were to answer or otherwise move, have admitted "that some form of service of process has been made on [some defendants] and that, therefore, their answer or response to the complaint is due." Indeed, given the worldwide notoriety of these attachments, notice of the actions involved herein clearly seems to have come to the attention of the defendants, at least in a general way.

Thus, we are dealing here with a situation in which the State of Iran, its agencies and instrumentalities, admittedly have actual notice of the pendency and the nature of the instant suits. And, while the Iranians have authorized counsel to appear for purposes of the joint confirmation hearing, the Iranians have steadfastly refused to authorize counsel to accept process despite the fact that the defendants, better than most, are acutely aware that the methods of service set forth in the FSIA have been, and continue to be, frustrated by the present situation in Iran.

Defendants are aware of the numerous problems and expenses encountered by plaintiffs in attempting to effect service under the precise terms of the FSIA. And, yet, they continue to seek refuge behind the hyper-technical requirements of the FSIA— requirements which clearly were promulgated in contemplation, at the very least, of

---

**2.** Although not advanced by the defendants in opposition to the instant motion, it could be argued that since the FSIA does provide a method of service upon a foreign government, its agencies and instrumentalities, the alternative provisions for service in a foreign country contained in Rule 4(i) are unavailable. It is clear, however, that the provisions of Rule 4(i) may be utilized "in addition to those provided in the federal statute." 2 Moore's Federal Practice ¶ 4.45, at 4–566 (2d ed. 1978).

friendship and of continuing diplomatic ties if not a generally amicable political environment. But the return of a signed postal card indicating receipt of a letter is not the sign of friendship—it is merely a matter of courtesy.

This conduct can only be interpreted as an intentional avoidance on the part of Iran, its agencies and instrumentalities, of service of process in an effort to frustrate the instant suits. Justice demands that a substitute form of service be formulated—one calculated to provide defendants with adequate notice of the pendency and nature of the instant suits. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

Thus, I turn finally to consider what type of service shall be sufficient upon the State of Iran, its agencies and instrumentalities. As I have stated above, all indications are that the government of Iran, its agencies and instrumentalities, already have actual notice of the pendency and nature of the instant actions.

To be sure, counsel has filed an appearance on their behalf at least for purposes of the confirmation hearing. In addition, counsel has stated that some form of process, although not necessarily in conformity with the precise terms of the FSIA, has been effected. Thus, it is apparent that the notice requirement of due process has long since been vindicated. However, to make absolutely sure that the State of Iran, its agencies and instrumentalities have notice of the instant actions, I direct plaintiffs to serve the pleadings in the following manner:

(1) Plaintiffs are to send in Farsi and English a telex message to the individual defendants the text of the summon, a notice of suit as provided in § 1608(a)(3) of the FSIA and a notice that a copy of the pleadings will be mailed under separate cover; [3]

(2) plaintiffs are also to serve a copy of the pleadings upon all counsel who have filed a notice of appearance on behalf of any of the defendants; and,

(3) plaintiffs are to file an affidavit with the Clerk of the Court reciting compliance with the above requirements.

If plaintiffs have previously complied with the above requirements, then service will be deemed sufficient. If they have not, they are directed to do so within the next thirty (30) days.

I am very cognizant of the fact that the procedure which I have ordered in these cases has little or no precedent in our jurisprudence. Courts, however, cannot be blind to changes and advances in technology. No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper or steam ships. Electronic communication via satellite can and does provide instantaneous transmission of notice and information. No longer must process be mailed to a defendant's door when he can receive complete notice at an electronic terminal inside his very office, even when the door is steel and bolted shut.[4]

Accordingly, the various motions of the plaintiffs for a substituted form of service upon the government of Iran, its agencies and instrumentalities are granted as provid-

---

**3.** When there is statutory authority for the service of process upon a foreign defendant in a foreign land, Rule 4(i) merely provides alternative ways of effecting service. "It does not, however, require that any of these alternative methods be used." 2 Moore's Federal Practice ¶ 4.45, at 4–566 (2d ed. 1978). To be sure, since these alternative provisions were intended to introduce considerable flexibility with respect to service of process in a foreign land, the Court is free to fashion its own mode of service under Rule 4(i)(1)(E) "to fit the necessities of a particular case," so long as the method forged by the Court satisfies the Due Process Clause. *International Controls Corp. v. Vesco*, 593 F.2d

166, 176 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979).

**4.** I have investigated the availability of telecommunication services between the United States and Iran and am informed that at least two companies continue to offer such services. Thus, as it stands now, telecommunication remains a sound method by which to insure that defendants are notified of the instant actions. The number of terminals in Iran is such that it would appear that all of the defendants, except perhaps for a few minor defendants, would have one immediately available.

ed above. This ruling is restricted to the question of service of process. It does not decide any of the other problems arising out of these matters.

IT IS SO ORDERED.

### ORDER

The administration of these cases is far from an easy chore both for this court and for the small group of defense lawyers. The defendants have requested a long extension of their time to answer or otherwise move in these matters. The attorneys for the plaintiffs object, even though aware that form motions or general denial answers will be filed in all of the cases. Indeed, I suspect that motions will be made to dismiss all of the actions for failure to effect proper service and/or lack of jurisdiction, in order to preserve these issues on appeal. The attorneys for the plaintiffs are entitled to start work on these or such other motions as may be forthcoming in the usual course. This is true whether or not the attachments involved are valid or proper.

Accordingly, the defendants are given a final fifteen (15) days' extension from the date hereof to answer or otherwise move in these cases.

SO ORDERED.