**FOREIGN EXCHANGE TRADE ASSOCIATES, INC., Plaintiff,**

v.

**ONCETUR, S.A., a corporation of Argentina, Samuel Merkin, Hernan Boher, Oscar Eduardo Navarro and Benedito Diaz Macedo, Defendant.**

No. 82 Civ. 5368 (DNE).

United States District Court, S.D. New York.

Aug. 13, 1984.

Stein, Simpson & Rosen, Michael Youdovin, Marc Joseph and Eric Weiss, of counsel, New York City, for plaintiff.

Cadwalader, Wickersham & Taft, Edwin Robertson and Joseph Polizzotto, of counsel, New York City, for defendants Hernan Boher, Oscar Navarro and Benedito Macedo.[1]

White & Case, P.B. Konrad Knake, of counsel, New York City, for Garnishee Banesto Banking Corp.[2]

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

The court has before it several motions by the parties in this case concerning an attachment of $500,000. The issues raised by these motions are all related. The court held a hearing on all these issues and will dispose of them together in this opinion.

### FACTUAL BACKGROUND

The plaintiff, Foreign Exchange Trade Associates, Inc. ("FETA"), is a New York corporation that carries on a business principally involving transmissions of money in commercial transactions. The defendants are: Oncetur, S.A. ("Oncetur"), a South American corporation, Samuel Merkin ("Merkin"), a foreign citizen and principal of Oncetur, Hernan Boher ("Boher"), a foreign citizen, Oscar Eduardo Navarro ("Navarro"), a foreign citizen, and Benedicto Diaz Macedo ("Macedo"), also a foreign citizen.

The plaintiff filed a suit against these parties on August 13, 1982. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. The plaintiff alleged that all the parties were involved in a financial transaction in which FETA was defrauded of $500,000, which was paid into an account jointly held by the three defendants, Boher, Navarro and Macedo, at Banesto Banking Corporation ("the bank").

On the same day the plaintiff applied for an ex parte order to attach the $500,000 in the defendants' account with the bank. The Part I judge of this court, the Honorable Constance Baker Motley, C.J., signed the ex parte order of attachment on that day. The order required an undertaking in the amount of $25,000–$20,000 to pay the defendants' costs if they prevailed and $5,000 to pay the Sheriff's or Marshal's fees. It also required the plaintiffs to move for confirmation of the ex parte order of attachment within five days "on such notice as the court directs." According to the affidavit of plaintiff's counsel, Judge Motley directed that notice be served on the garnishee, the bank, who would presumably give notice to the defendants whose funds were attached. *See* Reply Affidavit in Support of the Plaintiff's Motion to Confirm Ex Parte Order of Attachment sworn to by Marc Joseph, September 20, 1982 at 2–3; Reply Affidavit of Eric J. Weiss in Support of Plaintiff's Motion to Confirm Ex Parte Order of Attachment sworn to September 20, 1982 at 2. The plaintiff asserts that it still does not know the whereabouts of the defendants Boher, Navarro and Macedo and has not served them with a complaint.

The plaintiff complied with all the requirements of Judge Motley's order, and apparently the defendants received timely notice of the attachment because they submitted papers in opposition to the motion to

---

1. At the time of the hearing on January 12, 1983, the firm of Cadwalader Wickersham & Taft was being substituted by the defendants for the firm McGarrahan & Heard, Robert Hermann of counsel, which had represented the defendants prior to then. Caldwalader Wickersham & Taft is now the attorney of record for the defendants Boher, Navarro and Macedo.

2. The garnishee, Banesto, was permitted to submit papers to the court on all the issues relating to the attachment and attended oral argument, but was not heard at that time.

confirm the attachment. On September 23, 1982, this court granted plaintiff's motion to confirm the attachment.

On October 1, 1982 the plaintiff presented an order to show cause why an order should not issue: 1) extending for sixty days the time for the plaintiff to serve the complaint on the defendants to December 13, 1982; 2) directing the bank to turn over the attached funds to an appropriate escrow agent appointed by the court as a stakeholder until further order of the court. The court directed the plaintiffs to serve the order to show cause.

The plaintiff followed the court's direction, and counsel for the defendants, by letter dated October 6, 1982, opposed the sixty day extension of time to serve and the turnover of the attached funds. The defendants raised for the first time the argument that the funds were not in fact in New York, but lay in the bank's Grand Cayman branch. After due consideration of the defendants' objections the court found no exigency and rejected the order to show cause. The plaintiff was instructed to proceed by notice of motion. To avoid any possible conflict with the New York procedure for attachment,[3] the court by order dated October 7, 1982 extended the plaintiff's time to serve the complaint upon the defendants until December 11, 1982.

On October 14, 1982, plaintiff moved, by serving a notice of motion on the defendants' counsel and on the bank, for the same turnover of funds requested in the order to show cause and in the alternative for an extension of the order of attachment until January 13, 1983.[4]

The defendants argued that the plaintiffs should have commenced a separate proceeding as required by the New York attachment law and that, even assuming the procedure adopted by the plaintiffs was adequate, most of the funds were situated in the bank's Grand Cayman branch and therefore not subject to the attachment jurisdiction of the court. The bank submitted papers contending that international law complications would ensue if the court ordered an attachment of funds situated in a garnishee's foreign branch.

On November 12, 1982, the court ordered the attachment extended to January 13, 1983.

In a letter dated December 17, 1982, defendants contended that the time under New York CPLR § 6213 for service of the complaint had expired and that the attachment should therefore be vacated. Oral argument was held on January 12, 1983.[5]

On December 28, 1982 the plaintiff submitted a proposed order, pursuant to CPLR § 315, allowing the plaintiff to serve the defendants with the summons and complaint by publication.

The court now has before it: (1) the defendants' application to vacate the attachment, (2) the plaintiff's motion for service by publication, and (3) the plaintiff's motion to turn over the attached funds to an escrow agent.

## DISCUSSION

### A. Attachment

 The plaintiff secured attachment under Fed.R.Civ.P. 64, which provides that attachment remedies "are available under

---

**3.** Fed.R.Civ.P. 64 reads, "all remedies [including attachment] providing for seizure ... of property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held ...."

New York Civil Practice Law and Rules ("CPLR") § 6213 reads, "An order of attachment granted before an action is commenced is valid only if, within sixty days after the order is granted, a summons is served upon the defendant .... Upon such terms as may be just and upon good cause shown the court may extend

the time, not exceeding sixty days, within which the summons must be served ...."

**4.** On October 22, 1982 the plaintiff submitted to the court ex parte a proposed order allowing service of the complaint at the addresses of the defendant given by the defendants' bank, Banesto, the garnishee, to the plaintiff in a deposition. The court returned this proposed order unsigned.

**5.** At oral argument, this court ordered that all attached funds remain attached pending a further order of this court.

the circumstances and in the manner provided by the law of the state in which the district court is held ...." One requirement for attachment under New York law is contained in CPLR § 6213, which reads,

> An order of attachment granted before an action is commenced is valid only if, within sixty days after the order is granted, a summons is served upon the defendant.... Upon such terms as may be just and upon good cause shown the court may extend the time, not exceeding sixty days, within which the summons must be served....

More than 120 days passed since the plaintiff first attached the funds. The defendants claimed that they had not been served, and they requested this court, on the basis of a violation of CPLR § 6213, to vacate the attachment.

Fed.R.Civ.P. 64, however, makes the provision as to state procedure expressly subject to the superceding rule, "the action in which any of the foregoing remedies is used shall be commenced and prosecuted ... pursuant to these rules." Under Fed.R.Civ.P. 3, "A civil action is commenced by filing a complaint with the court." In this case the plaintiff filed the complaint, and subsequently obtained the attachment. Thus it is *not* the case here that the order of attachment was granted before the action was commenced. Hence the CPLR § 6213 time limit for serving the defendants appears to be inapplicable.

A careful reading of the federal rules supports this interpretation of Rule 64. Rule 64 clearly does not demand exact adherence to state procedure. For example, CPLR § 6214 requires a plaintiff to commence a separate special proceeding against a garnishee in order to reduce attached property to possession. Such a separate action is obviously impossible where as here the jurisdictional basis for the main action is diversity and there is no jurisdictional basis for an action between the plaintiff and the garnishee. *See infra*, note 9.

The interpretation of the Federal Rules, however, does not end the issue in the case at bar. This court faces an apparent conflict between a state rule and a federal rule

in a case in which jurisdiction is predicated upon diversity of citizenship. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) held that in diversity cases federal courts must apply state substantive law except where otherwise commanded by federal statutes. Furthermore, state procedure is equivalent to state substantive law in this regard if that procedure is an integral part of the policy underlying the state's substantive law. *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

Later cases have interpreted this rule to mean that "where the Federal Rule [is] clearly applicable" it is controlling if it is "within the scope of the Rules Enabling Act, 28 U.S.C. § 2072, and if so, within a constitutional grant of power ...." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 748, 100 S.Ct. 1978, 1984, 64 L.Ed.2d 659 (1980). However, when the scope of the federal rule is in doubt in a diversity case, and state law and federal procedure *appear* to offer contradictory rules, then "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945) (holding that a state statute of limitations barred the action in a federal equity case).

This court regards the language of Rule 64, that actions involving attachment "shall be commenced ... pursuant to these rules," as clearly applicable to the case at bar. The court bases this conclusion not only upon the interpretation of the language of the Rules as discussed above, but also on the philosophy of the rules. The Federal Rules rejected New York's so-called "hip-pocket" procedure, where a suit does not "commence" until the defendant is served and until then no papers are filed and the court does not become involved in the suit. 2 Moore's Federal Practice ¶ 3.03 (1982). CPLR § 6213 is a safeguard under the New York hip-pocket rule because it sets a limit on the time that an attachment can remain in effect before the initiation of

the suit—the attachment of funds should not continue too long without a public record being made and without a court closely supervising the case. In federal attachment cases, however, courts have long held that the suit commences with the filing. "A Federal Court has jurisdiction commencing with the filing of the bill, so long as process is issued in due course ...." *Jacobson v. Coon*, 165 F.2d 565, 567 (6th Cir.1948). Indeed, Rule 64 allows attachment only "[a]t the commencement of and during the course of an action ...." *See Miller v. Gillette*, 267 F.2d 783 (2d Cir.1959), *cert. denied*, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 472 (1960); *Lloyd v. Lawrence*, 60 F.R.D. 116, 120 (S.D.Tex. 1973); 7 Moore's Federal Practice ¶ 64.05 (1982). The CPLR § 6213 time limit thus has no procedural purpose in federal cases because judicial intervention commences with the attachment.

In *New England Merchants National Bank v. Iran Power Generation and Transmission Co.*, 495 F.Supp. 73 (S.D.N.Y.1980), the court faced the same issue and held that Rule 64 was clearly applicable and therefore that the CPLR § 6213 time requirement was inapplicable.

Even if Rule 64 does not "clearly" cover this situation, the federal rule for time of service in attachment cases should be upheld. The federal rule is: "the dictates of due process require that since the assets of the defendants are attached, they must have actual notice of attachment within a reasonable time. *Cf. Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)." *New England Merchants, supra*, 495 F.Supp. at 77. This rule passes muster under the outcome determinative test of *York*.[6]

■ On the basis of the foregoing, this court holds that in federal cases where an attachment has been ordered, the requirement for service of summons on the defendant whose property has been attached is actual notice of the underlying action within a reasonable time. In this case the defendants had notice of the attachment within days after it was ordered, and in papers hotly contesting the validity of that attachment, defendants have demonstrated that they also have actual notice of the underlying action. Under these circumstances the defendants' application to vacate the attachment is denied. To ensure that any parties potentially interested in the attached funds and doing business in the defendants' home area receive notice of the attachment, the plaintiff's application,

**6.** Later cases have refined the outcome determinative rule. The outcome determination test is not accomplished merely by inquiring whether the outcome will be altered if the court applies its interpretation of the Federal Rules instead of the state rule. Instead, the test "cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). The test requires the court to examine the case from the perspective of the time the case was filed. The test is: would applying the federal rule instead of the state rule (1) make the expected outcome different from what the plaintiff might expect in state court, or (2) encourage such a plaintiff to bring his suit in a federal forum. If the answer is "no," the federal rule stands.

CPLR § 6213 is obviously an integral part of a substantive state policy to ensure fairness to defendants whose property has been attached. Hence, if the court assumes arguendo that Rule 64 is not clearly applicable, then the decision of whether to follow the federal procedure or § 6213 must be made under the outcome determinative test as outlined above.

When a suit is filed no reasonable person would contend that the federal rule requiring actual notice within a reasonable time would create a different outcome from the state rule requiring statutory notice within 120 days. As to equity, no defendant can complain about the requirement that he receive *actual* notice within a reasonable time of the pending lawsuit underlying an attachment of his property. It provides greater protection to defendants than does the New York rule, which allows notice by publication that need not actually reach defendants.

As to forum shopping, "the actual notice within a reasonable time" rule is unlikely to attract to a federal forum significant numbers of litigants who would not otherwise have brought suit there because the Federal Rules do not give any significant advantage to a plaintiff over what he could obtain in state court.

pursuant to CPLR § 315,[7] for service by publication is granted.[8]

## B. Turnover

■ The plaintiffs have moved to have the funds turned over to an escrow agent. When publication notice is completed, if no other claimants to the fund appear to contest the turnover, it is hereby ordered that the fund will be turned over to an escrow agent.[9] The Manhattan Savings Bank at 385 Madison Avenue, New York, New York will serve as escrow agent. Plaintiff and defendant will bear equally any costs involved in the turnover.

7. CPLR § 315 reads:

> The court, upon motion without notice, shall order service of a summons by publication in an action [involving an attachment of property] if service cannot be made by another prescribed method with due diligence.

8. One of the purposes of the notice is to alert all interested parties so they may intervene. *See* CPLR § 6214(d): "The court may permit any adverse claimant to intervene ...."

9. Defendants contend that before plaintiff can secure a turnover of funds, it must commence a separate special proceeding pursuant to CPLR § 6214(d). Defendants are correct that plaintiffs must proceed under this section and that this section expressly requires commencement of a special proceeding. CPLR § 6214(d) and (e). Defendants, however, make the same error in applying this provision to a federal case as they made in applying the time limit provision of CPLR § 6213. Although attachment is available in the manner provided by New York law, any case involving attachment is prosecuted under the Federal Rules and the manner of attachment provided by New York law must be reasonably transferred into that procedural structure.

The Federal Rules do not contemplate a separate proceeding against garnishees. In many cases such a proceeding would not be allowed. For example, in this case jurisdiction is based on diversity. If the plaintiff here sued the garnishee there would be no federal question jurisdiction, no diversity, and no pendent jurisdiction because if CPLR § 6214 were followed exactly the special proceeding would have to be independent. The purpose of the special proceeding is to give the garnishee notice and to allow him to "interpose any defense or counterclaim which he might have interposed against the defendant if sued by him." CPLR § 6214(d). In federal courts actions such as the turnover funds are accomplished by notice of motion. Where plaintiff/movant notices the garnishee in addition to the attorney for the defendant, the garnishee has the notice and op-

■ The question as to what funds have been attached remains to be decided. The defendants claim that all but $1334.24 of the funds are in the bank's Grand Cayman branch and are not subject to the attachment order of this court. Defendants contend that the funds allegedly in Grand Cayman are beyond the jurisdiction of the court and that if the attachment on the entire $500,000 is held valid, it will upset many banking transactions by subjecting funds outside the jurisdiction of a court to attachment by that court. Such a rule could open banks to double attachment (and perhaps double liability) by courts in

portunity to raise defenses and counterclaims that CPLR § 6214(d) provides for him. Thus the federal motion practice, procedurally and substantively, take the place of the special proceeding.

Here the plaintiff moved for a turnover of funds and noticed the garnishee, the marshal and attorneys for defendants on the attachment issue. The garnishee had ample opportunity to raise defenses and counterclaims and indeed submitted numerous briefs, but raised no defenses or counterclaims. (For want of such a counterclaim or defense on which to be heard, the garnishee was not heard at the oral argument on the motions at bar.)

*Worldwide Carriers, Ltd. v. Aris Steamship Co.*, 312 F.Supp. 172 (S.D.N.Y.1970) has been raised as an objection to the court's holding herein. *Worldwide Carriers*, however, involved significantly different facts than the case here. The court emphasized that there was "no notice ... specifying time and place of the hearing." *Id.* at 177. Here there was such notice. In *Worldwide Carriers* the court stated that there was "[n]o attempt ... to serve ... the garnishees." *Id.* Here the garnishee was served. The plaintiff in *Worldwide Carriers* did not act until 60 days after the 90 day limit had expired. Here the plaintiffs acted within the 90 day limit. "Thus," the court in *Worldwide Carriers* noted, "the plaintiff wholly failed to comply with the requirements of the N.Y. CPLR ...." *Id.* This is simply not the case here. Furthermore, the *Worldwide Carriers* opinion did not attempt to specify what federal procedure would be adequate. Finally, the reasoning of the *Worldwide Carriers* case has been seriously questioned for relying on New York cases interpreting the former attachment statute. *See Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648, 652 n. 2 (2d Cir.1979); *National American Corp. v. Nigeria*, 448 F.Supp. 622 (S.D.N.Y. 1978), *aff'd.* 597 F.2d 314 (2d Cir.1979).

The plaintiff's motion, served on the attorneys for the defendants for the attachment issues and on the garnishee, satisfies the New York requirement in federal court.

different jurisdictions. Such a result, however, need not follow.

The defendants failed to raise this contention in opposition to the motion to confirm attachment. Indeed, the defendants did not raise the issue until almost two months after the original attachment when the court requested that defendants respond to the plaintiff's order to show cause why the funds should not be turned over to an escrow agent.[10] Courts cannot allow defendants whose funds have been attached to wait and pick their moment to raise the issue of the situs of the funds. The best way to make issues in these cases clear is to avoid holding a belated investigation in every case, and instead to require defendants to raise the issue at the time of the motion to confirm attachment so that courts may consider these arguments along with the others involved.[11]

This court holds that the defendants, by failing to raise the situs issue in their opposition to plaintiff's motion to confirm attachment, are estopped from raising that issue now.[12] Hence, the entire $500,000 remains attached and subject to the order of this court.

## CONCLUSION

Defendants' motion to vacate the attachment is denied. The Banesto Bank shall turn over the attached funds to the escrow agent, which shall hold them until further order of this court. Plaintiff's application to make service by publication is granted.

SO ORDERED.

10. The garnishee also raised the situs issue, and did so at the time for the garnishee to raise defenses and counterclaims, that is in response to the plaintiff's motion to turnover funds, which was served on the garnishee. The situs issue, however, is one for the defendant to raise. CPLR § 6214(d) limits those issues a garnishee may raise: "A garnishee may interpose any defense or counterclaim which he might have interposed against the defendant if sued by him." The bank is protected from double attachment. If another attachment is pending when a bank is served with a motion to turn over funds, the bank can raise the prior attachment as a defense.

11. The situation might be different if the garnishee had an actual branch in Grand Cayman where the funds were on deposit. Here, however, the funds are manifested in a purely paper notation in books situated in New York in a bank that does not even have an office or a mailbox on Grand Cayman Island.

12. Attornment in attachment cases is recognized by New York courts. *Cf. National American Corp., supra,* 448 F.Supp. at 634 and the cases cited therein.