**GRAUBARD MOLLEN DANNETT & HOROWITZ, Plaintiff,**

v.

**Andira KOSTANTINIDES, a/k/a Andrew Kostantinidis and Atlas Financial Holding, Inc., Defendants.**

**No. 88 Civ. 8054 (KC).**

United States District Court, S.D. New York.

March 21, 1989.

Graubard, Mollen, Dannett & Horowitz, Gary Mayerson, New York City, for plaintiff.

Wachtell, Manheim & Grauf, Steve Harnik, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

This action arises out of the failure of the defendants, an individual nondomiciliary and a foreign corporation controlled by him, to pay legal fees for services rendered by the plaintiff law firm, who is appearing *pro se.*

On September 29, 1988, plaintiff obtained, in Supreme Court, New York County, an *ex parte* Order of Attachment pursuant to CPLR 6201(1). Plaintiff moved to confirm the attachment on or about October 13, 1988. The defendants then cross-moved to vacate the attachment. On November 14, 1988, before the state court judge had the opportunity to render a decision on the motions, the defendants removed the action to this Court. Because of this removal, the Court must address what appears to be an issue of first impression: when an action is originally commenced in state court then removed to federal court, must the technical requirements of the Article 62 of the CPLR be satisfied?

Both parties' motions were renewed here with the defendant now moving to vacate the order of attachment on three "separate and independent grounds." Defendants' Memorandum of Law at 6–7. The Court will consider only one of these grounds, that the plaintiff failed to serve a summons within 60 days of obtaining the attachment as required by CPLR 6213, as it finds that ground to be dispositive. The plaintiff has moved for a "backup" order of attachment, in the event that the September 29, 1988 order is declared invalid, as well as an order enjoining the defendants pending service of the levy upon the new order of attachment from removing, transferring or otherwise dissipating the Merrill Lynch accounts, which are the subject of the September 29, 1988 attachment order.

A. *The Validity of the September 29, 1988 Order of Attachment*

■ In an action where the plaintiff obtains an *ex parte* attachment prior to service of the summons, CPLR 6213 provides that the order of attachment is invalid if the plaintiff fails to serve the summons in timely fashion. The statute specifically states that service of the summons must made within sixty days after the order is granted. *See* CPLR 6213. This sixty day period may be extended by the Court "provided that the application for the extension is made before the expiration" of the sixty day period and "[u]pon such terms as may be just and upon good cause shown." *See id.* The period of such extension is not to exceed sixty days; therefore, the maximum amount of time an order of attachment can survive before the commencement of an action is one hundred and twenty days. *See id.* and Practice Commentary C6213:1 (McKinney's 1980).

It is uncontested that plaintiff did not serve the defendants within the sixty day period specified by the statute. However, plaintiffs contend that because the defendants removed the state action to this Court before the sixty day period expired, the time requirement of CPLR 6213 is "of no force and effect" as the action is changed from a state attachment proceeding to a federal one which requires only "actual notice of the underlying action within a reasonable time." *See* Plaintiff's

Memorandum of Law at 6–7. This Court concludes that the requirements of Article 62 of the CPLR must be met in order for the attachment in this particular case to be valid. Because CPLR 6213 was not complied with, the attachment was rendered null and void on the sixty first day. *See* CPLR 6213 and Practice Commentary C6213:1 (McKinney's 1980). The reasons for the Court's conclusion are set forth below.

Plaintiff correctly states that the filing of a petition for removal automatically stays all proceedings in the state court from which the action is removed. *See* 28 U.S.C. § 1446(e). The action is then to proceed as if it were originally brought in federal court. Plaintiff is also accurate in asserting that Federal Rule of Civil Procedure 64 is operative. Plaintiff, relying primarily on two cases in this district, *Foreign Exch. Trade Assoc. v. Oncetur*, 591 F.Supp. 1496, 1499 (S.D.N.Y.1984); *New England Merch. Nat. Bank v. Iran Power*, 495 F.Supp. 73, 77 (S.D.N.Y.1980), argues that the "time requirements of CPLR 6213 are of no force and effect in a federal attachment action," and that Rule 64 "... clearly does not demand exact adherence to the state procedure." Plaintiff thus asserts that the deviation from CPLR 6213 in this case is not fatal. Here, the plaintiff errs.

The fact that this case was conditionally commenced in state court by plaintiff's obtaining the order of attachment, *see Washington v. Dunn*, 15 Misc.2d 765, 766, 182 N.Y.S.2d 213, 215 (Sup.Ct.Queens Co.1958), and then removed to the federal court by the defendant, does not, as plaintiff asserts, mean that state law can be disregarded. Rule 64 provides that "all remedies [including attachment] providing for seizure ... of property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district is held...." Plainly, Rule 64 requires that Article 62 of the CPLR be complied with. *See also* 7A J. Weinstein, H. Korn & A. Miller, New York Civil Practice § 6201.05, at 62–17 (1988).

In *Oncetur*, the court expressly stated that "it is *not* the case here that the order of attachment was granted before the action was commenced." 591 F.Supp. at 1499 (emphasis in original). For this reason, the court in *Oncetur* determined that the time limit prescribed by CPLR 6213 for serving the defendant "appear[ed] to be inapplicable" and that "Rule 64 clearly does not demand exact adherence to state procedure," and, therefore, that "actual notice ... within a reasonable time" was sufficient. *Id.* at 1499–1500. However, because the plaintiff here obtained the attachment order before officially commencing the suit by service of the summons, the plaintiff's reliance on *Oncetur* is misplaced. Similarly, because the *Iran Power* action was originally commenced in federal court, where it is "legally and factually impossible to obtain a pre-commencement order of attachment," 495 F.Supp. at 76, that case is also inapposite.

Furthermore, in addition to being distinguishable by their procedural postures, the cases cited by plaintiff can be distinguished by their facts. For example, *Iran Power*, a case consolidating almost one hundred similar cases, dealt with the extraordinary circumstances of the "Iranian Crisis" of the late 1970's and early 1980's. The plaintiffs attached the assets of many Iranian defendants seeking monetary damages for alleged wrongs "ranging from nationalization of private property to repudiation of executory contracts." *Iran Power*, 495 F.Supp. at 75. They were unable to serve the defendants within the time period provided in CPLR 6213 because of numerous factors beyond their control including the political climate in Iran, a breakdown of the postal service in Iran and the severance of diplomatic relations between the United States and Iran. Clearly, the facts are quite different in the instant case where there are no such extenuating circumstances; the reason that plaintiff did not serve defendants with the summons within sixty days was not impossibility, but rather, mere "inadvertence" on its own part. *See* Letter of Gary S. Mayerson, Esq., to Stephen M. Harnik, Esq., dated Dec. 1, 1988,

Defendants' Memorandum of Law, Exhibit C.

■ Plaintiff further argues that whether federal law or state law applies, the plaintiff "would reasonably 'expect' to have 120 days to serve the summons, and not only 60 days." Plaintiff's Memorandum of Law at 17. The main ground for this contention is that "plaintiff was *not* strictly limited to 60 days to serve the summons form. CPLR 6213 clearly makes provision for an additional 60 day *extension period* simply for the asking." *Id.* (emphasis in original, footnote omitted). Consequently, according to plaintiff, the CPLR is like Fed.R.Civ.P. 4(j) in that they both contemplate a "120 'day' window in which to serve the summons." *Id.*

While plaintiff is correct that the state statute allows for an extension for a period of up to sixty additional days, this extension is not made available just for the asking. In fact, this sixty day period may be extended by the Court "provided that the application for the extension is made before the expiration" of the 60 day period and "[u]pon such terms as may be just and upon good cause shown." Plaintiff has not satisfied either requirement. First, plaintiff, did not make an application for the extension within the first sixty day period. Plaintiff was not even aware that the defendants had not been properly served until the defendants' counsel wrote plaintiff on the sixty-first day and notified plaintiff that because the defendants were not properly served, they considered the attachment to be null and void and that they wanted it immediately vacated. Letter of Stephen M. Harnik, Esq. to Richard I. Donner, Esq., dated Nov. 30, 1988, Defendants' Memorandum of Law, Exhibit A. It is also questionable whether the plaintiff could have shown "just and good cause" for the extension, as required under the statute.

Further supporting the conclusion that the CPLR time requirements regarding the validity of an attachment order must be strictly construed is the fact that when plaintiff obtained the attachment and filed the confirmation papers in state court, it clearly expected that the state law on at- tachment would apply. It did not, and could not at that time, expect that federal law would apply. Simply because the case was removed by the defendant does not mean that plaintiff should be allowed the windfall of having the federal court construe the CPLR more liberally than the state court would. *Compare Foreign Exch. Trade Assoc. v. Oncetur,* 591 F.Supp. 1496, 1500 (S.D.N.Y.1984) ("the requirement for service of summons on the defendant whose property has been attached is actual notice of the underlying action within a reasonable time") *with Saleh Al–Dohan v. Kouyoumjian,* 114 Misc.2d 170, 172, 451 N.Y.S.2d 367, 369 (Sup.Ct.N.Y.Co.1982), *aff'd,* 93 A.D.2d 714, 461 N.Y.S.2d 2 (1st Dep't 1983) ("CPLR 6213 is more than merely a notice statute, as a summons is more than mere notice"; service of copy of the complaint with confirmation motion papers, although providing actual notice, did not operate as proper service). Plaintiff's original choice of forum was the state court where it could obtain an order of attachment prior to the official commencement of an action. Had plaintiff brought the action in the first instance in the federal court, the situation would have been more comparable to the *Oncetur* case where the CPLR was more liberally construed.

Accordingly, for all of the foregoing reasons, the order of attachment dated September 29, 1988, obtained pursuant to CPLR 6201(1) by the plaintiff is hereby vacated.

**B.** *Whether Plaintiff is Entitled to a New Order of Attachment*

In the event that its prior attachment was declared invalid, plaintiff moved for a new order of attachment as well as an order enjoining the defendants pending service of the levy upon the new order of attachment from removing, transferring or otherwise dissipating the Merrill Lynch accounts, which were the subject of the September 29, 1988 attachment order that this Court found technically invalid. Defendants dispute the necessity of a new attachment order.

Rule 64 of the Federal Rules of Civil Procedure provides that "all remedies [including attachment] providing for seizure ... of property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district is held...." Therefore, the Court must look to Article 62 of the CPLR. The Court notes that the provisional remedy of attachment is discretionary with the Court. *Merrill Lynch Futures Inc. v. Kelly*, 585 F.Supp. 1245, 1259 (S.D.N.Y.1984); *Reading & Bates Corp. v. National Iranian Oil Co.*, 478 F.Supp. 724, 726 (S.D.N.Y. 1979). It may be denied even when a plaintiff otherwise satisfies the statutory requirements. *See Kelly*, 585 F.Supp. at 1259.

The plaintiff requests the attachment pursuant to CPLR 6201(1). This subsection permits attachment for two purposes: (1) obtaining jurisdiction over non-residents and (2) securing judgment against nondomiciliaries. *ITC Entertainment, Ltd. v. Nelson Film Partners*, 714 F.2d 217, 220 (2d Cir.1983). Plaintiff has the burden of establishing the grounds for the levy. *See Reading & Bates Corp. v. National Iranian Oil Co.*, 478 F.Supp. 724 (S.D.N.Y.1979).

■ Plaintiff has shown that defendant Andirya Kostantinidis himself acknowledges that he is not a resident or domiciliary of New York; that defendant Atlas Financial Holding, Inc. is a Delaware corporation not licensed to do business in New York; and that defendants have maintained offices and/or residences in Saudi Arabia, Kuwait, London, Greece, Turkey, Florida and New York. Further, the plaintiff has shown that the only assets of the defendants here in New York are the accounts at the Merrill Lynch brokerage firm. These accounts, by nature, are liquid and can be easily transferred from the jurisdiction by a simple telephone call. Therefore, if the defendants were permit-

ted to liquidate the account and if plaintiff were then to recover a judgment against the defendants, plaintiff would be in the inauspicious position of having to chase defendants to Saudi Arabia, Panama, Turkey or some other venue. Accordingly, an attachment under CPLR 6201(1) is entirely appropriate under these facts.

To obtain an order enjoining the defendants from transferring or disposing of these assets in the interim period between the signing of this order and the actual levy, plaintiff must meet the standards necessary to obtain preliminary injunctive relief in this district. Plaintiff must show (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir. 1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

Plaintiff has shown that legal services were rendered by plaintiff to defendants and that defendants failed to pay for such services. Thus, it is probable that plaintiff will succeed on the merits of the principal claim of breach of contract. However, looking at the rest of the claims in the complaint, plaintiff has not shown the probability of success with respect to the claims for punitive damages. *See, e.g., Supreme Auto. Mfg. Corp. v. Continental*, 126 A.D. 2d 153, 155–56, 512 N.Y.S.2d 820, 822–23 (1st Dep't), *appeal dismissed mem.*, 69 N.Y.S.2d 1038, 511 N.E.2d 90, 517 N.Y.S.2d 1031 (1987) (punitive damages are not recoverable for breach of contract, even where the breach was intentional or effected with malicious intent). Therefore, plaintiff has shown that it is likely that it will recover a judgment against the defendants in the sum of approximately $55,000, the amount of compensatory damages claimed.[1] At a minimum, plaintiff has shown sufficiently serious questions going

---

1. The Court notes that defendants have threatened to bring a counterclaim for legal malpractice for over one million dollars, but have not done so to this date. Therefore, it can be said at this time that the amount plaintiff will recover exceeds all counterclaims known to it, a requirement under state law.

to the merits to make them fair ground for litigation. Regarding the balance of hardships, defendant Kostantinidis has stated that he is a man of "substantial means with assets all over the world," Defendants' Reply Memorandum at 4, consequently, the attachment of these Merrill Lynch accounts is not unduly burdensome to the defendant. It would, however, be burdensome to the plaintiff to have to go and find the defendant's assets in some other state or country. Thus, the balance of hardships clearly tips in plaintiff's favor. The irreparable harm requirement follows from this discussion of the hardship to the plaintiff in that without an order enjoining the defendants from removing the assets from the account, plaintiff might effectively be without a way to recover in New York any judgment it might obtain.

*Conclusion*

In light of all of the foregoing, the Court concludes that the September 29, 1988 order of attachment is invalid; that an order of attachment, pursuant to the same terms as the order of attachment originally obtained in New York Supreme Court, should issue; and that defendants are hereby enjoined from removing, transferring or otherwise dissipating the Merrill Lynch accounts in the interim period between the signing of this order vacating the September 29, 1988 order of attachment and the actual levy upon a new order of attachment, the form of which shall be submitted by plaintiff to this Court for signature, within three days of the date hereof.

SO ORDERED.