Michael LIPPUS and Marcia Lippus, Plaintiffs,

v.

DAHLGREN MANUFACTURING COMPANY, Royal Zenith Corporation, Veb Polygraph Druckmaschinenwerk Planeta, Defendants.

ROYAL ZENITH CORP. and Dahlgren Manufacturing Company, Third Party Plaintiffs,

v.

UNITECAHNA AUSSENHANDELSGE-SELLSCHAFT MBH, Volkssigener Aussenhandelsbetrieb Polygraph Export-Import Company, and Four Seasons Printing Company, Inc., Third Party Defendants.

No. CV 84–1713.

United States District Court, E.D. New York.

Sept. 26, 1986.

Pester, Goldberg & Schiff, Carle Place, N.Y., for plaintiffs.

Botein, Hays & Sklar, New York City, for defendants Planeta, Unitechna & Polygraph.

Conway, Farrell, O'Connor, Cutrin & Kelly, P.C., New York City, for Royal Zenith.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff spouses Michael and Marcia Lippus commenced this products liability action against the Dahlgren Manufacturing Company ("Dahlgren"), Royal Zenith Corporation ("Zenith"), and VEB Polygraph Druckmaschienenwerk Planeta ("Planeta"), in New York State Supreme Court for an injury sustained by Michael Lippus in the course of his employment. Planeta, an instrumentality of the German Democratic Republic ("GDR"), removed the action to this Court under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–11. Zenith and Dahlgren have asserted cross-claims against each other and Planeta. Zenith commenced a third party action against Four Seasons Printing Company, Inc. ("Four Seasons"), Unitechna Aussenhandelsgesellschaft m.b.H. ("Unitechna"), and Volkseingener Aussenhandelsbetrieb Polygraph Export-Import Company ("Polygraph"). On consent and by Order of Magistrate Jordan, Dahlgren joined in this third party action. Four Seasons cross-claimed against its two co-third party defendants and asserted counterclaims against Zenith and Dahlgren. Planeta, Polygraph and Unitechna (collectively the "GDR Defendants") have not asserted any cross-claims, counterclaims, or third party claims. Discovery in the case is virtually complete and the matter has been scheduled for a nonjury trial. Before the Court at this time are Planeta's motions to dismiss plaintiffs' Complaint for insufficiency of process, Rule 12(b)(4), Fed.R.Civ.P., and the GDR Defendants' joint motion to dismiss or stay Zenith's cross-claims pending arbitration or litigation in the GDR. The Court will turn first to Planeta's motion to dismiss plaintiffs' Complaint for insufficiency of process.

## I.

The following facts are relevant to the service of process issue. On May 13, 1983, plaintiffs delivered a copy of the Summons and Complaint to a Mr. Horst Streichan in the commercial section of the GDR embassy in New York City. In an affidavit, counsel for Planeta states that Streichan has no connection with Planeta, but is an employee of Unitechna. Altman Affidavit, ¶ 5. Three weeks later, plaintiffs served another copy of the Summons and Complaint at the GDR's New York embassy on a person named Ms. Dachmar. Planeta's attorney also states that upon information and belief no one by the name of Ms. Dachmar is employed at the GDR embassy. Altman Affidavit, ¶ 5. It appears, however, that the person served may have been Dagmar Kuehnelt, Mr. Streichan's secretary. Neither Streichan nor Kuehnelt are apparently authorized to accept service on behalf of Planeta. Defendant's counsel also affirms that Planeta has no office in the United States, is not authorized to do business in New York, and has no officer, managing or general agent authorized to receive service of process in the United States. Rand Affidavit, ¶ 2. On August 3, 1983, plaintiff served a copy of the Summons and Complaint on the New York Secretary of State pursuant to N.Y.Bus. Corp.L. § 307, and re-served the Secretary of State on November 7, 1983, who confirmed service in a letter dated December 9, 1983.

In March 1984, plaintiffs' counsel received a short letter from a Dieter Peh, who is a First Secretary in the Commercial Section of the GDR's New York embassy. In pertinent part, the correspondence stated that:

Today we got your Third Party Summons dated August 22, 1983. Please notice that the POLYGRAPH–Export-Import foreign trade enterprise is located in the German Democratic Republik, 1080 Berlin, Friederichstrasse 61.

If you want to send something to this enterprise, please send it to the above mentioned address.

Although it is uncontested that Zenith attempted to join Polygraph to the action as a third-party defendant in a Summons dated August 22, 1983, there is no indication that the Lippuses have asserted a claim against Polygraph, who is sued here as a third party defendant. Nevertheless, on March 12, 1984, plaintiffs' counsel attempted to re-serve Planeta by sending a copy of the Summons and Complaint against Planeta to the GDR at the Berlin address mentioned in Peh's letter. The papers were not addressed and dispatched by the clerk of the court but were merely sent certified mail and without a German translation. On April 5, 1984, plaintiffs' counsel again sent an untranslated copy of the Summons and Complaint, this time by registered mail return receipt requested, to Planeta at another address in the GDR and also to Polygraph in Berlin with instructions to forward the documents to their lawyers in the United States. Planeta's attorney states that in April 1984, he received from Planeta a copy of plaintiffs' April 5 Summons and Complaint. Rand Affidavit, ¶ 3. Shortly thereafter, Planeta removed the action to this Court.

Planeta argues that the Complaint should be dismissed because plaintiffs have failed to comply with the service provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(b) ("FSIA").[1] It is conceded that under the FSIA proper service must be made upon Planeta in accordance with either the first clause of subsection (b)(2) (by delivery of the Summons and Complaint in English to an agent or officer in the United States), or by clause (B) of subsection (b)(3) (by having the clerk of the court mail a copy of the Summons and Complaint return receipt requested together with a German translation, to Planeta's offices in the GDR). It is beyond doubt that § 1608 is the exclusive means of service under the FSIA. 1976 U.S.Code Cong. & Ad.News 6604, 6622. Planeta contends that plaintiffs have not complied with the service provisions of the FSIA, either under subsection (b)(2) or (b)(3)(B).

Though styled as a motion to dismiss for lack of personal jurisdiction, Rule 12(b)(2) or insufficiency of process, Rule 12(b)(4), Planeta's motion to dismiss for failure to comply with subsection (b)(2) can also be classified as a motion under Rule 12(b)(5) to dismiss for insufficiency of service of process. C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1353. In any event, Planeta contends that the service of process at the commercial section of the GDR embassy in New York is inadequate under subsection (b)(2) because Planeta has no agents or officers in the United States authorized to accept process.

Plaintiffs do not dispute these facts, but argue that service on the Secretary of State, pursuant to N.Y.Bus.Corp.L. § 307 (McKinney 1986), qualifies as valid service upon "any other agent authorized by appointment or by law to receive service of process in the United States." 28 U.S.C. § 1608(b)(2). The issue is one of first impression. Although there is no indication from either the plain language of the stat-

---

1. § 1608(b) provides that:
   (b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
   (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
   (2) if *no special arrangement exists,* by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

   (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
   (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
   (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
   (C) as directed by order of the court consistent with the law of the place where service is to be made.

ute or the legislative history that Congress intended for substituted service under state law to fall within the provisions of the FSIA, *see* 1976 U.S.Code Cong. & Ad.News 6624, the only other court to have been confronted with a similar question held that service on the Virginia Secretary of the Commonwealth pursuant to the Virginia long-arm statute could "conceivably" be proper under the FSIA. *See Unidyne Corporation v. Aerolineas Argentinas,* 590 F.Supp. 391 (E.D.Va.1984).

In *Unidyne,* an American corporation commenced an action for breach of contract against Aerolineas Argentinas, which is an instrumentality of the sovereign nation of Argentina. Service was effected by mailing a copy of the Summons and Complaint to the Virginia Secretary of the Commonwealth, who acknowledged service and forwarded the court documents to Aerolineas' office in New York. 590 F.Supp. at 395. In granting the motion to dismiss for lack of personal jurisdiction under 28 U.S.C. § 1330(b), the *Unidyne* court apparently assumed without discussion that the service of a foreign sovereign in accordance with the state was proper under subsection (b)(2) but found that Aerolineas was beyond the reach of the Virginia long-arm statute. Therefore, despite receipt of service, Aerolineas was not subject to personal jurisdiction under federal law.

■ With all due respect, this Court disagrees with the analysis employed in *Unidyne.* Federal law fully pre-empts the states in the area of foreign relations even though the FSIA represents a more limited view of foreign sovereign immunity. When federal law pre-empts state law, reference to local law is simply not germane. The federal court is the only forum in which either the GDR or Planeta can be sued and § 1608 is the exclusive method of service of process. Absent a clear indication from Congress that the FSIA incorporates state law by reference, this Court is unwilling to allow an arm of a foreign government to be subject to personal jurisdiction under state law. Moreover, upon close examination, the legislative history

appears to reject an implicit incorporation of state law by reference. The statute does not explicitly rule out service under state law, but the legislative history states specifically that § 1608 was meant to fill a void in state and federal law. H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 23 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad. News 6622. To allow service under state law would vitiate the clear intent of Congress to reserve to federal law the exclusive method for service of process.

■ In addition, incorporating the service provisions under state law would make the statute confusing, unwieldy, and ineffective. Use of state service does not appear to coincide with the objective of the FSIA's service provisions, namely, the creation of a single statute calculated to ensure that the foreign governmental entity has notice of the suit. Allowing the law of the states to satisfy service under § 1608(b)(2) would mean that the concise and limited procedures spelled out in § 1608 would be supplemented by the multitude of non-uniform methods of service for each of the fifty states. In effect, the exception would swallow the rule. This construction of the statutory language could not have been the intent of Congress and the Court therefore holds that service on the Secretary of State under state law is improper under § 1608.

■ Assuming, however, that this reasoning is incorrect, there are independent grounds to invalidate service under § 307. First, Planeta is a commercial entity of a foreign sovereign and as such, can hardly be deemed a "foreign corporation" as that term is defined under New York's corporation law. *See* N.Y.Bus.Corp.L. § 102(a)(7). Second, it appears that plaintiffs failed to comply with the service provisions of § 307. The Court concludes therefore that attempted service under § 307 is not valid service under the FSIA.

Planeta also contends that service did not comply with subsection (b)(3)(B) because: (1) service was not dispatched by the clerk of the court and; (2) a German translation did not accompany service. Once again,

plaintiffs do not contest these deficiencies under subsection (b)(3)(B) but argue that under the holding in *Banco Metropolitano v. Desarrollo de Autopistas y Carreteras de Guatemala*, 616 F.Supp. 301 (S.D.N.Y. 1985), Deh's March 5, 1984 letter to plaintiffs' counsel constituted a "request" "by an authority of a foreign state or political subdivision. . . ." under 28 U.S.C. § .1608(b)(3)(A). Plaintiffs contend that Deh's letter takes this case outside the statutory requirements and that the service by mail in the GDR in mid-March and early April conformed to this "request."

In *Banco Metropolitano* a Guatemalan bank commenced an action in New York state court to recover payment on promissory notes guaranteed by the monetary authority of Guatemala. Service was attempted initially when plaintiff bank delivered process in English at defendants' office in Guatemala, at which time plaintiffs were allegedly advised to serve process at Guatemala's New York consulate, which they did the following day. Defendant then moved to dismiss, disputing that it had ever advised service in New York. In denying defendant's motion to dismiss, Judge Sweet held that defendants had apparently "requested" that service be made in a particular manner and service of process in English in New York, pursuant to this "request", though not in technical compliance with subsection (b)(3)'s requirement that a translation accompany process, appeared to constitute substantial compliance with the statute. Judge Sweet did not hold conclusively that service was valid, but merely that plaintiff had made a *prima facie* showing that jurisdiction existed. Until such time as an evidentiary hearing could be held to resolve contested factual allegations, that court held that the motion to dismiss would be denied. 616 F.Supp. at 304. "Given the nature of the issues presented and the problems intended to be addressed by the FSIA, strict enforcement of its technicalities here would be inappropriate." *Id.*

■ The case at bar is factually and legally distinguishable from *Banco Metro-*

*politano.* Peh's letter, though sent to plaintiffs' counsel, can hardly be deemed a "request" of the Lippuses because Peh's letter referred to Zenith's third party Complaint against Polygraph and not to plaintiffs' action against Planeta. Although it is not clear why Peh sent the letter to plaintiffs' counsel, the letter had nothing to do with plaintiffs' claim. Copies of the Summons and Complaint were mailed by plaintiffs to Polygraph, but as best the Court can determine, plaintiffs have not sued Polygraph. To the extent that Peh's letter could be deemed a "request" under subsection (b)(2), it was, at best, a request of Zenith, not plaintiffs. In addition, even if Deh's letter could be termed a "request" of all litigants to serve process on Polygraph in Berlin, it still would not be a request from Planeta, because it would appear that Deh is without authority to issue such a request on behalf of Planeta. In any event, the Lippuses have not asserted a claim against Polygraph.

■ Moreover, despite the clear wording of the statute, none of the documents mailed to the GDR was accompanied by a German translation. It is no answer that Peh's letter did not require a translation because under (b)(3), a party cannot waive the translation requirement. § 1608(b)(3). The wording of subsection (b)(3) makes it clear that an official translation must accompany the Summons and Complaint whenever service is attempted under (b)(3), regardless of which of these three methods under (b)(3) is employed. In addition, there are sound reasons for requiring that the opening volley of court documents be translated. Subsection (b)(3) is the service of last resort under the FSIA. In the event that service cannot be made under (b)(1) or (b)(2), Congress clearly wanted to insure that a foreign government would be apprised of the pendency of the lawsuit because (b)(3) requires specifically that the service be "reasonably calculated to give actual notice. . . ." Comprehension of court documents from a foreign land is aided if they are accompanied by a translation in the defendant's language, especially

if there may not be ready access to translators or interpreters. § 1608(b)(3) is therefore designed so that upon receipt of a Summons and Complaint in their own country, non-English-speaking governments will not be handicapped by a language barrier in their inability to respond to a distant lawsuit. *See cf.* § 1608(b)(2) (service of process on the officer or agent of a foreign sovereign in the United States need not be accompanied by a translation). Despite some liberality of interpretation by the courts with respect to § 1608, *e.g., Harris Corporation v. National Iranian Radio and Television,* 691 F.2d 1344, 1352 n. 16 (11th Cir.1982), none of the exigencies meriting a liberal interpretation is present here. *New England Merchants National Bank v. Iran Power Generation and Transmission Company,* 495 F.Supp. 73 (S.D.N.Y.1980) (allowing modified service on Iranian defendants during a revolutionary period).

Although the Court cannot understand why plaintiffs never complied with the plain language of subsection (b)(3), allowing them to perfect service at this time ensures compliance with the words and spirit of the FSIA and allows the lawsuit to go forward. It is uncontested that Planeta and its New York attorneys have long had actual notice of the lawsuit by way of the March 12, 1984 mailing. Planeta has participated in the lawsuit through counsel, discovery is complete, and the matter has been placed on the trial calendar. Furthermore, service defects appear readily curable and despite the protestations of Planeta's counsel, there is little tangible prejudice to Planeta. Rule 4(h), Fed.R.Civ.P.; C. Wright & A. Miller § 1131.

Accordingly, Planeta's motion to dismiss plaintiffs' Complaint for insufficiency of process is denied at this time. Plaintiffs shall effect proper service on Planeta under (b)(3) within thirty (30) days of this Order.

## II.

Third Party Defendants Unitechna and Polygraph have also moved to dismiss Zenith's third party Complaint because of defective service and the GDR Defendants have moved jointly to stay Zenith's cross-claim pending arbitration by the Chamber of Foreign Trade or litigation in the Courts of the GDR.

## A.

Before turning to the merits of the arguments, it would be helpful to address the impact of this motion on jurisdiction over the claims of co-defendants and the continuing subject matter jurisdiction of the Court as it has been brought to the Court's attention in a letter from Dahlgren's counsel. Initially, in the event that Zenith's third-party Complaint against Unitechna and Polygraph is dismissed for insufficiency of service of process, in accordance with an Order promulgated by Magistrate Jordan at an October 23, 1984 pre-trial conference, Dahlgren's third party Complaint must also be dismissed for the same reason. In a letter to the Court, Dahlgren states that it has no position on the motion, although by the terms of the Magistrate's Order, the fortunes of Dahlgren's third party Complaint will rise or fall with the success or failure of Zenith's attempts to commence a third party action against Unitechna and Polygraph.

Dahlgren's letter deals primarily with the lack of subject-matter jurisdiction should Planeta's motions be granted. Despite Dahlgren's concern, so long as any of the GDR Defendants are subject to liability, the Court will retain subject-matter jurisdiction over the case. This is true even if the Court grants any renewed motion by Planeta to dismiss plaintiffs' Complaint for insufficiency of service of process because the Court retains subject-matter jurisdiction over the cross-claims against Planeta as an action against a foreign sovereign under the FSIA. Moreover, although it would be premature for Planeta to have challenged service of the cross-claims, *see* C. Wright, A. Miller & M. Kane, § 1433 n. 47.1 (1986 Pocket Part), it is within the Court's discretion to allow Dahlgren and Zenith to re-serve the cross-claims against

Planeta or allow them to join Planeta as a third party defendant. Rule 4(h), Fed.R. Civ.P. Furthermore, even if the Court also grants the motion to stay Zenith's cross-claims against the GDR Defendants pending arbitration or litigation, this will not deprive the Court of subject-matter jurisdiction; first, because Dahlgren's cross-claim will still be litigated in this Court and, second, because a stay does not deprive the Court of jurisdiction. Therefore, contrary to the suggestion of Dahlgren's counsel, a disposition of the instant motions in favor of the GDR Defendants will not deprive the Court of subject-matter jurisdiction. The Court expresses no opinion, however, on the propriety of exercising ancillary or pendent party jurisdiction over the remaining state law claims between non-diverse parties. *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976).

### B.

■ Unitechna and Polygraph contend that Zenith's third party Complaint should be dismissed against them because of improper service of process. Rule 12(b)(2), (4), Fed.R.Civ.P. It is uncontested that the only service by Zenith upon either Polygraph or Unitechna was made on March 5, 1984 when the Summons and third party Complaint was served personally at the GDR embassy in New York upon a Mr. John Smith who allegedly held himself out to be a managing agent or officer Unitechna. In an affidavit attached to defendants' moving papers, counsel states that "neither Unitechna nor Polygraph has an office in the United States; neither is authorized to do business in New York; and neither has an officer, managing or general agent authorized to receive service of process in the United States." Rand Affidavit, ¶ 4. Defendants' counsel admits that a wholly owned subsidiary of Polygraph entitled Unitechna Export-Import ("Export-Import"), a New York corporation, maintains offices at the GDR embassy but counsel states that Export-Import has no connection to the instant case, does not employ anyone by the

name of John Smith, and no one at Export-Import can recall receiving a third-party Summons. *Id.*

Zenith's response is that valid service was made on Export-Import and that this constituted proper service on all GDR Defendants because, as commercial entities of a foreign government, they are all alter egos of each other and inextricably bound together. Zenith also contends that if service was defective, dismissal at this advanced stage of the litigation would be inequitable and Zenith should be permitted to re-serve.

Turning to the validity of service on Polygraph and Unitechna, it is apparent that Zenith has established a *prima facie* case for valid process, but that the issue cannot be resolved in the absence of a preliminary hearing. The affidavit of Zenith's process server states that service was made at the GDR embassy upon a John Smith who held himself out as authorized to accept service of process. In direct contradiction, counsel for the GDR Defendants states that there is no John Smith and no one in the United States can accept process on behalf of any of the GDR Defendants. Accordingly, a decision on the motion to dismiss the third party Complaint for insufficiency of service of process is reserved pending a hearing. *Banco Metropolitano*, 616 F.Supp. at 304.

### C.

The GDR Defendants have also moved to stay adjudication of Zenith's cross-claim and third party Complaint pending litigation or arbitration in the GDR. They point to section 18(3) of a September 1977 agreement between Royal Zenith and Unitechna, which states that:

> All differences arising out of or in connection with this Contract will be decided at option of the plaintiff by the Court of Arbitration to the Chamber of Foreign Trade or by the competent regular law-

court at the main residence of the defendant.[2]

Unitechna argues that under the Federal Arbitration Act, 9 U.S.C. § 3, and international treaties, Zenith must arbitrate its claim with Unitechna or litigate it in the GDR.[3] Unitechna also contends that a stay is not discretionary with the district court, and that the arbitration clause as agreed to by Zenith is broad enough to encompass cross-claims and third party claims for contribution and indemnity. Polygraph argues that, as a successor in interest to Unitechna, Zenith's claims against Polygraph should also be stayed. Finally, Planeta argues that claims against it should likewise be stayed because under agency law or principles of third-party beneficiaries, it enjoys the benefits of the arbitration provision.

As best as they can be gleaned from its papers, Zenith appears to argue that the language of the arbitration clause only applies to differences arising out of the contract between Unitechna and Zenith and not to cross-claims for contribution or indemnity deriving from the injury to Michael Lippus. This argument is without merit. Third party claims fall within the language of broadly-phrased arbitration provisions. *S.A. Mineracao da Trinclade-Samitri v. Utah International, Inc.*, 745 F.2d 190, 194 (2d Cir.1984); *Acevado Maldonado v. PPG Industries*, 514 F.2d 614, 616 (1st Cir.1975). The language of section 18(3) is broad enough to cover a third party claim by Zenith against Unitechna.

Zenith argues next that this Court should stay arbitration until it is determined whether any of the GDR Defendants would face liability because Zenith would not pursue its cross-claims against the GDR Defendants for contribution or indemnity if either another defendant is found wholly liable or there is a verdict in favor of all defendants. Despite the appeal of this argument, this Court lacks the discretion to stay arbitration, even if a stay would avoid inconsistent verdicts or piecemeal adjudication. 9 U.S.C. § 3; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed. 765 (1983); *Tai Ping Insurance Company, Ltd. v. M/V Warschau*, 731 F.2d 1141 (5th Cir.1984) (questioning *Petroleum Helicopters, Inc. v. Boeing-Vertol, Co.*, 606 F.2d 114 (5th Cir.1979) ).

Zenith also argues that the cross-claim against Planeta should not be stayed because Planeta was not a party to the arbitration agreement and is not a successor in interest to or united in interest with either Unitechna or Polygraph. Planeta responds it is entitled to invoke the arbitration clause because Unitechna and Polygraph, as foreign trade enterprises, are little more than Planeta's agents and, under GDR law, Planeta "is obliged to cooperate in arbitration or judicial proceedings which involve claims asserted by or against a partner outside the GDR." Memorandum In Support of Motion to Stay, 16–17. The answer to this question first requires an examination of the relationship between the GDR Defendants.

In September, 1977, Unitechna and Zenith entered into a standard form printed agreement making Zenith Unitechna's exclusive distributor in the United States. Pursuant to the terms of this agreement, Zenith has the sole selling rights in the United States of the products, spare parts,

---

2. Similar language requiring arbitration or litigation is found in other agreements between the parties. *See* GDR Defendants' Exhibits 2, 4.

3. It is undisputed and beyond contention that the arbitration clause falls under the provisions of both federal and international law. 9 U.S.C. § 3 states that:

> If any suit ... be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ..., upon being satisfied that the issue involved in such suit ... is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, June 10, 1958, 21 U.S.T. 2517, T.I. A.S. No. 6697, U.N.T.S. (codified at 9 U.S.C. § 201 note), to which the United States and the GDR are parties, also requires arbitration here.

and accessories of five separate GDR manufacturers, one of which was Planeta. For its labors Zenith would receive a commission on sales in the United States. In April, 1980, pursuant to the distributorship agreement, Unitechna sold to Zenith the machine involved in this lawsuit. Planeta was not a party to that sale. In August, 1980, Polygraph was created by an official governmental act of the GDR, and, pursuant to an agreement among Unitechna, Polygraph, and Zenith, Polygraph succeeded to the business of Unitechna. Planeta has no authority to sell its products directly to Zenith. It must first sell them to Unitechna (later Polygraph), who would in turn sell them to Zenith for export to the United States. Rand Affidavit, ¶ 9. In their distributorship agreement with Zenith, Unitechna and Polygraph signed in their own capacities and not on behalf of or as an agent for Planeta or any other GDR manufacturers whose products they exported.

■■■ Under the Federal Arbitration Act, "federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability [of arbitration agreements]." *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Beromun Aktiengesellschaft v. Societa Industriale Agricola "Tresse"*, 471 F.Supp. 1163, 1169 (S.D.N.Y. 1979); *In re Ferrara S.p.A.*, 441 F.Supp. 778, 780 n. 2 (S.D.N.Y.1977), *aff'd without opinion*, 580 F.2d 1044 (2d Cir.1978). The applicable body of federal law consists of generally accepted principles of contract law. *Fisser v. International Bank*, 282 F.2d 231 (2d Cir.1960); *Ferrara*, 441 F.Supp. at 780. In this Circuit, "ordinary principles of contract and agency determine which parties are bound by an agreement to arbitrate." *McAllister Brothers, Inc. v. A & S Transportation Co.*, 621 F.2d 519, 524 (2d Cir.1980); *Wren Distributors, Inc. v. Phone-Mate, Inc.*, 600 F.Supp. 1576, 1580 (E.D.N.Y.1985); *Farkar Co. v. R.A. Hanson Disc., Ltd.*, 441 F.Supp. 841, 845 (S.D. N.Y.1977), *modified on other grounds*, 583 F.2d 68 (2d Cir.), *aff'd on rehearing*, 604 F.2d 1 (2d Cir.1978). Determining the substance of "ordinary contract principles" is in itself no simple threshold task given the complexities attendant to choice of law questions, *Farkar*, 441 F.Supp. at 845, and the international dimension of this lawsuit.

■■■ Applying these principles to the instant case, it is beyond doubt that Unitechna, as a party to the agreement, and Polygraph, as a successor in interest to Unitechna, may enforce the arbitration clause. *Interocean Shipping Company v. National Shipping and Trading Company*, 523 F.2d 527, 539 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Fisser*, 282 F.2d at 233 (parties can become contractually bound absent their signatures). With respect to Planeta, however, it is apparent that there is no contractual relationship between Planeta and Polygraph and the exporter is not acting as an agent for the manufacturer. The printed form agreement between Unitechna and Zenith is signed by an official of Unitechna on behalf of that entity. Planeta is only mentioned once, in a typed appendix, as one of five GDR manufacturers whose products Unitechna will sell to Zenith. In short, there is no evidence that Polygraph is an agent for Planeta. "Further, absent findings of fraud or bad faith, a corporation ... is entitled to a presumption of separateness from a sister corporation ... even if both are owned and controlled by the same individuals." *American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 502 F.2d 674, 677 (2d Cir. 1974). Although both Polygraph and Planeta are wholly-owned instrumentalities of the GDR, that does not rebut the presumption that they are separate entities, incapable of acting for and on behalf of one another. An examination of the agreement between Unitechna and Zenith does not reveal any of the essential elements of an agency relationship, *i.e.*, that Polygraph may alter legal relations between Planeta and another, that Polygraph acts as a fiduciary, or Planeta controls Polygraph. *See* Restatement of Agency 2d §§ 12–14 (1958). Therefore, the Court concludes that Planeta lacks the right to invoke the arbitration

clause on behalf of itself to stay Zenith's cross-claims.

### D.

 The final issue to be discussed is whether the entire action should be stayed pending resolution of the arbitration proceeding. Although this Court must stay the adjudication of arbitrable claims pending arbitration, 9 U.S.C. § 3, this is not the case with non-arbitrable claims. *Wren Distributors*, 600 F.Supp. at 1581. This Court's power to proceed "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1957). There are, however, many considerations pertinent to a resolution of this issue. *See Landis*, 299 U.S. at 254–55, 57 S.Ct. at 166; *Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Company*, 339 F.2d 440 (2d Cir.1964).

As the circumstances presently appear, a stay is not warranted. A trial on the merits of plaintiffs' claim may result in a finding of no derivative liability on the single claim to be arbitrated, thus rendering the arbitration moot. Furthermore, the arbitration proceeding will not settle any of the underlying fact questions here; at best it will establish the extent of any derivative liability between Zenith and Polygraph. Moreover, arbitration is unlikely to result in a speedier resolution of the case. Quite the opposite, a stay of these proceedings to permit arbitration between Zenith and Polygraph and Unitechna will likely result in a lengthy delay to a cause that is already over two years old. All pre-trial proceedings are complete and this case would have gone to trial but for the instant motions. Nevertheless, there may be facts bearing on the issue of a stay that have not been brought before the Court and, in this light, Dahlgren's suggestion of a pre-trial conference is well taken. Therefore, the motion to stay the non-arbitrable claims pending arbitration is denied at this time.

### III.

Planeta's motion to dismiss plaintiffs' Complaint for insufficiency of process is denied at this time. Plaintiffs' are allowed thirty (30) days to re-serve Planeta or their Complaint will be dismissed for insufficiency of process. Decision on the motion by Unitechna and Polygraph to dismiss Zenith's third party Complaint for insufficiency of service of process is reserved pending a preliminary hearing. The motion by Unitechna and Polygraph to stay the third party Complaint pending arbitration is granted. Planeta's motion to stay cross-claims is denied. The parties are directed to appear before the Court for a status conference on October 16, 1986 at 9 a.m.

SO ORDERED.