**In re INTERNATIONAL TELEMEDIA ASSOCIATES, INC., Debtor.**

**Herbert C. Broadfoot II, As Chapter 7 Trustee, Plaintiff,**

v.

**Arjuna Diaz, Kevin Frace, Diane Shepard, Gerard Engel, Dennis Howe, Karen Pettifer, and Norman Klugman, Defendants.**

Bankruptcy No. 98–75533 SWC.
Adversary No. 99–6233.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 15, 2000.

William C. Humphreys, Jr., Alston & Bird LLP, Atlanta, GA, for plaintiff.

Arjuna Diaz, defendant pro se.

## ORDER

### STACEY W. COTTON, Chief Judge.

Pursuant to Federal Rule of Civil Procedure 55, as incorporated by Federal Rule of Bankruptcy Procedure 7055, Plaintiff Herbert C. Broadfoot II, Chapter 7 Trustee ("Trustee") for International Telemedia Associates, Inc. ("ITA," "Company," or "Debtor") has moved this Court for entry of judgment by default against Defendant Arjuna Diaz ("Diaz"). Defendant Diaz failed to answer or otherwise defend against the Complaint. By virtue of default, he is deemed to have admitted the allegations contained in the Complaint as to liability. On December 2, 1999, the Court held a hearing on said Motion to determine the amount of damages for which Diaz is liable. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (H).[1] The court's findings of fact and

conclusions of law are set forth hereinafter:

## FACTS

### A. *Nature of the Action and Service on Arjuna Diaz*

On September 15, 1998, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the Debtor. *See* Complaint ¶ 3. Plaintiff Trustee was appointed on September 25, 1998. *See id.* at ¶ 4.

Pursuant to Federal Rule of Bankruptcy Procedure 7001(1), the Trustee filed this adversary proceeding complaint against Diaz and several other defendants on May 14, 1999. The Trustee seeks recovery of damages from Diaz, a former officer and director of ITA, for mismanagement of the Debtor. · *See id.* at ¶ 1. The allegations of the Complaint include, but are not limited to: breach of fiduciary duty, waste of corporate assets, improper disposition and diversion of corporate assets, fraudulent transfer of funds, preferential transfer of funds and recovery of unpaid loans of ITA to Diaz.

On June 11, 1999, the Trustee moved the court, pursuant to Federal Rule of Civil Procedure 4(f)(3), as incorporated by Federal Rule of Bankruptcy Procedure 7004, for an order authorizing the Trustee to serve a copy of the Summons and Complaint in this adversary proceeding upon Diaz, a defendant in a foreign country, by facsimile transmission, electronic mail, and by mail to Diaz's last known address. *See,* Motion for Service of Process by Facsimile Transmission, Electronic Mail, and Mail to Defendant's Last Known Address ("Motion for Service"). At that time, Diaz had not been served with the adversary complaint and had not otherwise made any appearance.

On June 21, 1999, this Court held a hearing on the Trustee's Motion for Ser-

---

1. Even if Plaintiff's claims were determined to be noncore matters, Plaintiff has consented to entry of a final judgment. *See,* Complaint at

¶ 8. Defendant has failed to plead or otherwise defend this action.

vice. This appears to be a matter of first impression to the extent that the motion seeks an order authorizing service by electronic mail. Upon consideration of the Motion for Service, the supporting Affidavit of Herbert C. Broadfoot II, the authorities cited in the Trustee's supporting Memorandum of Law, and the arguments of counsel at the hearing, an order was entered authorizing the Trustee to effect service on Diaz by facsimile transmission, electronic mail, and mail to Diaz's last known address.[2] *See,* Order entered on June 22, 1999, authorizing service of process on Defendant Arjuna Diaz by Facsimile Transmission, Electronic Mail, and Mail to Defendant's Last Known Address ("Order Authorizing Service"). In that order, the Court further ordered:

that until such time as Diaz retains counsel and identifies such counsel to the Trustee or otherwise designates and identifies to the Trustee an authorized agent in the United States to receive service of pleadings and papers in the above-styled action on his behalf, the Trustee may serve all pleadings and papers in the above-styled action upon Diaz in the manner set forth hereinabove.

*Id.*

On June 25, 1999, the Trustee caused service to be effected in accordance with the Order Authorizing Service, serving Diaz with a copy of the Summons, Complaint, and this Court's Order Authorizing Service. *See,* Certificate of Service filed on June 28, 1999. Specifically, the Trustee's Certificate of Service stated as follows:

This is to certify that, pursuant to this Court's "Order Authorizing Service of Process on Defendant Arjuna Diaz by Facsimile Transmission, Electronic Mail, and Mail to Defendant's Last Known Address" entered on June 22, 1999, I have this date caused a copy of the

following documents in the above-styled action:

(1) AMENDED SUMMONS IN AN ADVERSARY PROCEEDING;

(2) COMPLAINT; and

(3) ORDER AUTHORIZING SERVICE OF PROCESS ON DEFENDANT ARJUNA DIAZ BY FACSIMILE TRANSMISSION, ELECTRONIC MAIL, AND MAIL TO DEFENDANT'S LAST KNOWN ADDRESS

to be served upon Defendant Arjuna Diaz by the manner and means set forth below:

(1) By facsimile transmission to: (815) 352–6137;

(2) By electronic mail to: *ita0999@hotmail.com;*

and

(3) By international airmail to:

Mr. Arjuna Diaz

20 Saunders Road

Singapore 228265

This will further certify that:

(1) I attempted to serve the foregoing documents upon Defendant Arjuna Diaz by electronic mail to *arjuna@prahlad.org,* but that I received a reply message indicating that the documents could not be delivered to that electronic mail address;

(2) I received no such reply message with respect to my service of the foregoing documents by electronic mail to *ita0999@hotmail.com;* and

(3) I received a facsimile confirmation sheet indicating that my transmittal of the foregoing documents by facsimile transmission to (815) 352–6137 was successful.

*Id.*

Thereafter, on July 12, 1999, the Trustee moved this Court pursuant to Federal Rule of Bankruptcy Procedure 7012 for an

2. The propriety and legal effect of service of process upon Diaz by the alternative means prescribed by the Court's Order Authorizing Service is examined in detail at Part II.A, *infra.*

order prescribing the time within which Diaz would be permitted to serve an answer to the Complaint in this action. On the same day, the Trustee caused a copy of the motion and the supporting Memorandum of Law to be served on Diaz in accordance with the Order Authorizing Service. *See,* Certificate of Service filed on July 12, 1999.

Upon consideration of the authorities cited by the Trustee and all other relevant matters of record, the Court entered an order on July 15, 1999, pursuant to Federal Rule of Bankruptcy Procedure 7012, prescribing the time within which Diaz could serve a response to the Complaint in this action. The order provides that "Defendant Arjuna Diaz shall serve an answer to the complaint in this action within sixty (60) days after June 25, 1999, the date process was served upon him in this action, meaning that Defendant Arjuna Diaz's answer shall be served on or before August 24, 1999." *Id.* On July 19, 1999, the Trustee caused this Court's Order Prescribing Time to be served upon Diaz in the manner prescribed by this Court's Order Authorizing Service. *See* Certificate of Service filed July 19, 1999.

**B. *Default of Arjuna Diaz***

The Trustee filed a Request for Entry of Default on August 31, 1999, with a supporting Affidavit of Default which was served upon Diaz on August 30, 1999. *See,* Certificate of Service filed August 31, 1999. As set forth in the Affidavit of Jeffrey J. Swart, counsel for the Trustee, filed on August 31, 1999, Diaz failed to answer or otherwise defend against the Complaint in this action within the time prescribed by the July 15, 1999 Order.

On September 1, 1999, the Court Clerk entered a default against Defendant Diaz in this action. Thereafter, on October 14, 1999, the Trustee filed a Motion and Memorandum of Law requesting entry of a default judgment against Diaz. A copy of the Trustee's Motion for Default Judgment and supporting Memorandum of Law were served upon Diaz on October 14, 1999,

pursuant to the Order Authorizing Service. *See,* Certificate of Service filed on October 14, 1999.

On November 5, 1999, this Court entered an Order setting a hearing on the Trustee's Motion for Default Judgment on December 2, 1999, at 2:00 p.m. *See,* Order and Notice of Assignment of Hearing entered on November 5, 1999. In accordance with the Order Authorizing Service, a copy of this Order and Notice of Assignment of Hearing was served upon Diaz on November 8, 1999. *See,* Certificate of Service filed on November 8, 1999.

**DISCUSSION**

**A. *Personal Jurisdiction Based Upon Alternative Service of Process on Diaz***

As discussed more fully below, the propriety of the Court's inclusion of electronic mail among the alternative methods by which the Trustee may serve process on Diaz appears to be a matter of first impression. Thus, before discussing the evidence as to damages, the Court will address its personal jurisdiction over the defendant, based upon the Trustee's service of process on Defendant Diaz by the alternative means of service prescribed in this Court's Order Authorizing Service. *See, e.g., Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 n. 6 (11th Cir.1999) ("A court without personal jurisdiction is powerless to take further action."); *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 847 (11th Cir.1988) ("Before a federal court may exercise personal jurisdiction over a defendant, there must exist both a constitutionally sufficient relationship between the defendant and the forum, i.e. minimum contacts, and a basis for the defendant's amenability to service of summons.") (citation omitted); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2682 (3d ed. 1998) ("Before a default can be entered, the court must have juris-

diction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process.").

### 1. Need for Alternative Service of Process on Diaz

■ The evidence presented in connection with the Trustee's Motion for Service clearly demonstrates Diaz to be a "moving target," making it virtually impossible for the Trustee to find him and effect service by any of the traditional means specified in the Federal Rules of Civil Procedure. Although ITA was founded and operated by Diaz in Georgia, Diaz no longer resides in this state. *See,* Affidavit of Herbert C. Broadfoot II dated June 8, 1999 at ¶ 12. Indeed, according to a memorandum prepared by the former Chief Financial Officer of ITA, Diaz has avoided having a personal residence in the United States for some time. *See, id.* at ¶ 10. However, Diaz operated this Georgia corporation as its sole officer, director and chairman. *See,* Complaint at ¶ 11. ITA operated until shortly before the bankruptcy case was filed.

The Trustee spoke by telephone with Diaz six to ten times between October 1998 and March 1999. *See,* Affidavit of Herbert C. Broadfoot II dated June 8, 1999 at ¶ 2. Nevertheless, Diaz consistently refused to provide the Trustee a telephone number or a permanent business or residential address. *See, id.* at ¶¶ 2–3. Instead, Diaz claimed to be traveling throughout Europe and the Far East and refused to identify the country in which he would be at a given time. *See, id.* at ¶ 5. Although Diaz once provided the Trustee with a temporary address at a friend's residence, bankruptcy schedules mailed to that address were refused, and Diaz requested that the Trustee re-mail those schedules to a hotel in Zurich, Switzerland. *See, id.* at ¶ 4. That hotel address was of no use in serving process on Diaz, however, because the Trustee had no reason to believe that Diaz was still a guest at that hotel. *See, id.* The difficulty of locating Diaz in the course of his international travels is further illustrated by the fact that Diaz's mother called the Trustee from Rhode Island in an effort to locate her son. *See, id.* at ¶ 6.

After a search of ITA's records, the Trustee discovered Diaz's last known residential address at 20 Saunders Road in Singapore. *See, id.* at ¶ 13. While ITA's records indicated that ITA entered into a three-year lease of that property in the spring of 1996 for the purpose of providing Diaz with a residence, the Trustee has no evidence that Diaz still resides in Singapore and has received no correspondence from Diaz indicating that it had been sent from any Singapore address. *See, id.* In short, notwithstanding the Trustee's diligence, the physical whereabouts of Diaz could not be ascertained in order to effect service of process on him by traditional means.

Although Diaz failed or refused to provide the Trustee with a mailing address, he *did* provide the Trustee with a permanent facsimile number, in addition to an electronic mail address at *ita0999@hotmail.com. See, id.* at ¶ 7–8. Diaz sent the Trustee a letter dated March 6, 1999, specifically instructing the Trustee to use the new permanent facsimile number (815) 352–6137 for any future correspondence and stating that "the received FAXes are forwarded to me and stored on my E-mail." *See, id.* at ¶ 7 & Exhibit B attached thereto. This indicates a preference of Diaz for communication by facsimile and electronic mail. Moreover, in a subsequent communication dated March 8, 1999, Diaz discussed the bankruptcy proceedings at length, revealed a concern that the Trustee was investigating his actions, and repeated his admonition that "From now on, you may contact me by FAX. . . ." *See, id.* at ¶ 11 & Exhibit F attached thereto. The court finds, therefore, that Diaz simply provided the Trustee with an electronic address rather than a traditional postal or street address.

In the course of researching Diaz's alleged waste of corporate assets, the Trustee discovered that Diaz maintained a second electronic mail address at *arjuna@prahlad.org* in his capacity as a "disciple" of the Prahlad Foundation. This entity is a religious foundation dedicated to the teachings of Sri Prahlad Chandra Brahmachari and supported in part by corporate funds transferred from ITA by Diaz. *See, id.* at ¶ 9 & Exhibits C–D attached thereto. The Prahlad Foundation's site on the World Wide Web at *www.prahlad.org*, however, does not list a mailing address for Diaz.

To summarize, despite diligent efforts, the Trustee is left without any feasible methods for contacting Diaz except by facsimile transmission and electronic mail, Diaz's preferred methods of communication, and by mail to Diaz's last known address. Accordingly, the Trustee filed his Motion for Service, requesting authorization to effect service on Diaz by those alternative means.

### 2. Applicability of Federal Rule of Civil Procedure 4(f)(3)

Federal Rule of Civil Procedure 4(f)(3) and its predecessor, Federal Rule 4(i)(1)(E), were adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods for service of process in foreign countries. Initially, in 1963, the Rule provided for five different methods of alternative service on foreign defendants. The fifth method, set forth in Rule 4(i)(1)(E), was a residual method adopted for the express purpose of "add[ing] flexibility by permitting the court by order to tailor the manner of service to fit the necessities of a particular case." *See,* Fed.R.Civ.P. 4 advisory committee's note (1963 Amendment). This residual method, and the discretion it provided to the federal courts, has continued with the modern version of Rule 4(f)(3), as follows:

**(f) Service Upon Individuals in a Foreign Country.** Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:

. . . . .

(3) *by other means not prohibited by international agreement as may be directed by the court.*

Fed.R.Civ.P. 4(f)(3) (emphasis added).

█ Thus, so long as the particular method of service adopted is not contrary to international agreement, Rule (4)(f)(3) provides the Court with the same degree of flexibility and discretion as its predecessor, empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case.

The court is cognizant of the fact that its prior order authorizing service by electronic mail, as well as other alternative means of service, has little or no precedent in this or any other Circuit. Likewise, the Court also recognizes that any unspecified form of alternate service usually has its genesis in untried or formerly unapproved methodology. It has been estimated that at the end of 1998 there were nearly 150 million users of the Internet.[3] It is reasonable to infer that number has increased over the past year. It would be akin to hiding one's head in the sand to ignore such realities and the positives of such advancements.

Relying on Rule 4(f)(3) and its predecessor, courts have authorized a wide variety of alternative methods of service, including mail to the defendant's last known address, publication, delivery to the defendant's attorney-agent, telex, and ordinary mail. *See, International Controls Corp. v. Vesco,* 593 F.2d 166, 176–78 (2d Cir.1979) (approving service by mail to last known address); *Federal Home Loan Mortgage*

---

**3.** *See,* Rachel Cantor, Comment, *Internet Service of Process: A Constitutionally Adequate* *Alternative,* 66 U.Chi.L.Rev. 943 (1999) (citation omitted).

*Corp. v. Mirchandani,* No. 94 CV 1201(FB), 1996 WL 534821, at *4 (E.D.N.Y. Sept. 18, 1996) (unreported decision) (allowing service by publication in a law journal); *Mayatextil, S.A. v. Liztex U.S.A., Inc.,* No. 92 CIV. 4528(SS), 1994 WL 198696, at *5 (S.D.N.Y. May 19, 1994) (unreported decision) (authorizing delivery to defendant's attorney-agent); *New England Merchants Nat'l Bank v. Iran Power Generation & Transmission Co.,* 495 F.Supp. 73, 80 (S.D.N.Y.1980) (allowing service by telex for Iranian defendants); *Levin v. Ruby Trading Corp.,* 248 F.Supp. 537, 541–44 (S.D.N.Y.1965) (holding that service by ordinary mail was proper under the circumstances). Even courts that have declined to exercise their discretion under the Rule have acknowledged that they have the power, subject to international agreements,[4] to "unilaterally define an appropriate method for service." *Mayoral–Amy v. BHI Corp.,* 180 F.R.D. 456, 460 (S.D.Fla.1998).

■ Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the Court to direct service upon Diaz by facsimile transmission, electronic mail, and mail to the defendant's last known address. In fact, the court notes, as did the court in *New England Merchants, see,* 495 F.Supp. at 81 n. 4, that the only means of communication between the Trustee and Diaz is electronic mail. This means has been authorized by Diaz due to his frequent and unexpected travel. Although the Court is unaware of any domestic precedent authorizing service of process by electronic mail,[5] the drafters of the federal rules promulgated a nonexhaustive list of alternative means by which service can be authorized pursuant to Rule 4(f)(3). The rule is expressly designed to provide courts with broad flexibility in tailoring other methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts. Accordingly, the Court concludes that, under the facts in this action, service upon Diaz by the means set forth in the Court's Order Authorizing Service, including service by electronic mail,[6] is fully authorized

4. In the absence of any dispute or evidence to the contrary, the Court presumes, without deciding, that the alternative means of service specified in the Order Authorizing Service is not contrary to any international agreements.

5. Extensive research of the subject strongly suggests that the only prior judicial decision authorizing service of process by electronic mail in any jurisdiction was issued in England in 1996. *See* Frank Conley, Comment, *:-) Service with a Smiley: The Effect of E-mail and Other Electronic Communications on Service of Process,* 11 Temp. Int'l & Comp.L.J. 407, 427–28 (1997) (examining English High Court case authorizing service by electronic mail); *see also* Wendy R. Liebowitz, *U.K. Court: Serve Process Via E-mail,* Nat'l L.J., July 8, 1996, at B1 (reviewing same case). Moreover, the press generated as a result of this Court's Order Authorizing Service further supports the conclusion that although the principle embodied by Rule 4(f)(3) has remained unchanged, the Court's Order Authorizing Service constitutes the first time that service of process by electronic mail has been authorized in a case pending in the United States. *See Can Foreign Defendant Be Served by E–Mail?,* Lawyers Weekly USA, Nov. 1, 1999, at 6; *Bankruptcy Court Issues Default Judgment Based on Failure to Answer E–Mailed Service,* United States Law Week, Sept. 28, 1999, at 2167 (describing the Court's Order Authorizing Service as "one of the first orders of its kind," but failing to appreciate the distinction between the entry of default and the entry of a default *judgment* ); Barney Tumey, *Bankruptcy Court Issues Default Judgment Based on Failure to Answer E–Mailed Service,* Electronic Commerce & Law Report, Sept. 22, 1999, at 86 (same); Barney Tumey, *Bankruptcy Court Issues Default Judgment Based on Failure to Answer E–Mailed Service,* BNA's Bankruptcy Law Reporter, Sept. 23, 1999, at 796 (same); Barney Tumey, *Bankruptcy Court Issues Default Judgment Based on Failure to Answer E–Mailed Service,* Daily Report for Executives, Sept. 17, 1999, at A–7 (same); *Served by E–Mail;* Atlanta Business Chron., Sept. 3–9, 1999, at 6A; *Bankruptcy Court Authorizes Service Via E–Mail, Fax,* Internet Law & Regulation, June 22, 1999 (Internet article available at http://internetlaw.pf.com).

6. The Court is aware that a district court in Pennsylvania has recently issued an unreported decision stating that "[e]lectronic mail ... is not an approved method of service under

by Federal Rule of Civil Procedure 4(f)(3), as incorporated by Federal Rule of Bankruptcy Procedure 7004.

### 3. Satisfaction of Constitutional Due Process Requirements

 The Court must also consider whether the exercise of personal jurisdiction over Diaz in connection with that service comports with federal constitutional requirements. Even when the Federal Rules authorize the use of an alternative method of service, the Due Process Clause mandates an inquiry into whether that method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see also, e.g., Hanson v. Denckla*, 357 U.S. 235, 245, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958) (applying same standard). Diaz has been served at his designated electronic address. The Court concludes that the Trustee's service upon Diaz pursuant to Rule 4(f)(3) complies fully with that constitutional standard.

Under the facts and circumstances described above, the methods of service prescribed by the Order Authorizing Service are reasonably calculated to provide Diaz with actual notice that an action had been initiated against him and with an opportunity to present his defense. Indeed, the Court authorized service was made by the very methods of communication preferred by Diaz in his communications with the Trustee and others—transmission to his electronic mail account and facsimile transmission accessible through his electronic mail account.

If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them. Moreover, communication by facsimile transmission and electronic mail have now become commonplace in our increasingly global society. The federal courts are not required to turn a blind eye to society's embrace of such technological advances. As the Southern District of New York noted almost twenty years ago:

> Courts ... cannot be blind to changes and advances in technology. No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper or steam ships. Electronic communication via satellite can and does provide instantaneous transmission of notice and information. *No longer must process be ·mailed to a defendant's door when he can receive complete notice at an electronic terminal inside his very office, even when the door is steel and bolted shut.*

*New England Merchants*, 495 F.Supp. at 81 (emphasis supplied) (holding that telex was an appropriate method of service for Iranian defendants during a period of hostility between the governments of the United States and Iran); *accord*, Conley, *supra* note 3, at 427–28 (examining En-

Federal Rule of Civil Procedure 4," *WAWA, Inc. v. Christensen*, No. CIV.A. 99–1454, 1999 WL 557936, at *1 (E.D.Pa. July 27, 1999) (unreported decision), but that statement has no bearing under the circumstances presented here. The plaintiff in *WAWA*, unlike the Trustee here, failed to seek or obtain the district court's prior authorization to effect service on a foreign defendant by electronic mail. Having failed to obtain such authorization, the plaintiff's attempt to serve process by electronic mail was, by definition, not service by a means "directed by the court." Under

Rule 4(f)(3), direction by the court is required. The Trustee in this case obtained that direction; the plaintiff in *WAWA* did not. Accordingly, the Trustee's authorized service in accordance with that direction satisfied Rule 4(f)(3), whereas the *WAWA* plaintiff's unauthorized service by electronic mail did not. Likewise, in *Borninski v. Texas Instruments, Inc.*, 32 F.Supp.2d 918 (N.D.Tex.1998), the District Court, without addressing the merits, left undisturbed an order of the Magistrate Judge denying the plaintiff's request to serve deposition notices by e-mail.

glish High Court case authorizing service by electronic mail and concluding that "[w]hen an e-mail address is the only available means of communication with a defendant, there is no logical or legal reason not to use it").

The Trustee diligently pursued other means of communication to no avail. Diaz has intentionally concealed his location and failed to respond to the Trustee's inquiries regarding his whereabouts. A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party. *See, e.g., Vesco,* 593 F.2d at 175 (authorizing alternative method of service when individual "was known to be not adverse to evading the service process"). The practical reality recognized and given effect by the *New England Merchants* court in 1980 applies with even greater force today. Under the facts and circumstances of this case, the Trustee's service of process upon Diaz by facsimile transmission, electronic mail, and mail to his last known address provides a sufficient basis for the Court's exercise of personal jurisdiction over Diaz. Accordingly, the Court concludes that exercise of personal jurisdiction over Diaz based upon the authorized service satisfies both Rule 4(f)(3) and comports fully with the constitutional standards of due process.

### B. *Hearing to Establish Damages Related to Liability of Arjuna Diaz*

Plaintiff's Motion for Default Judgment came on for hearing on December 2, 1999, upon notice, in accordance with this Court's Order and Notice of Assignment of Hearing. No appearance was made by or on behalf of Diaz. Counsel for Plaintiff Trustee was present and ready to proceed.

The Trustee called Robert E. Hutchins ("Hutchins"), of Technology & Dispute Resolution Consulting, Inc. ("TDRC"), to testify regarding the damages attributable to the various claims asserted against Diaz in the Complaint, liability with respect to which had been established as a matter of law by Diaz's default. The Trustee's evidence established that Hutchins and TDRC had been engaged, pursuant to Court order, as the Trustee's accountants and financial consultants in this Chapter 7 case. Through Hutchins' sworn testimony, the Trustee further established that Hutchins:

(1) possesses specialized knowledge, skill, experience, training, and education in the subjects of accounting and finance;

(2) has significant experience in the telecommunications industry;

(3) has significant experience in the calculation of damages and lost profits;

(4) performed an extensive evaluation of the books and records of ITA in an effort to quantify the damages attributable to the allegations against Diaz as set forth in the Complaint; and

(5) based upon his specialized knowledge, skill, experience, training, education, and his evaluation of the books and records of ITA, he was able to form an opinion as to the amount of damages attributable to the allegations against Diaz as set forth in the Complaint.

The Trustee tendered Hutchins as an expert pursuant to Federal Rule of Civil Procedure 702, and requested that Hutchins be allowed to testify regarding the analysis he had performed and the opinions he had formulated regarding the damages attributable to the actions and inactions of Diaz as alleged in the Complaint.

Without objection, the Court found and concluded that Hutchins was qualified as an expert and could testify regarding his methodologies, findings, and conclusions with respect to the damages analysis he had performed. Upon the Trustee's oral motion, the Court also admitted into evidence Hutchins' professional resume and an exhibit prepared by Hutchins summarizing the damages analysis he had performed. *See,* Plaintiff's Exhibit 1 (dam-

ages analysis) and Plaintiff's Exhibit 2 (professional resume of Robert Hutchins). Thereafter, Mr. Hutchins testified regarding his damages analysis, findings and conclusions which he had reached regarding the damages attributable to Diaz as set forth in the Complaint.

### C. *Liability of Diaz Established by His Default in this Action*

Federal Rule of Civil Procedure 55, as incorporated by Federal Rule of Bankruptcy Procedure 7055, provides for the entry of default and default judgment against a party who fails to defend against an action. In relevant part, that Rule provides as follows:

(a) **Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(b) **Judgment.** Judgment by default may be entered as follows:

. . . . .

(2) **By the Court.** In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. *If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the* *amount of damages* or to establish the truth of any averment by evidence or to make an investigation of any other matter, *the court may conduct such hearings or order such references as it deems necessary and proper* and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed.R.Civ.P. 55(a) & (b) (emphases added).

Diaz has failed to answer or otherwise defend against the Trustee's Complaint within the time prescribed by this Court's Order Prescribing Time. Accordingly the Clerk's Entry of Default was entered on September 1, 1999.

■ In light of Diaz's failure to answer or defend against the Trustee's Complaint, the factual allegations set forth in the Trustee's Complaint are deemed admitted by Diaz. "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact...." *Nishimatsu Const. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975);[7] *see also, e.g., Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir.1987) (same); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

Where, as here, the liability of the defendant is well-pleaded in the complaint, such liability of the defaulting defendant "is therefore established by the entry of default against him." *Buchanan,* 820 F.2d at 361 (citing *Cocklereece v. Moran,* 500 F.Supp. 487 (N.D.Ga.1980)). By his default, Diaz has admitted the factual allegations establishing his mismanagement of ITA and waste of its corporate assets, the fraudulent conveyances and preferential

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

transfers made to him, and his failure to repay loans due and owing to the estate from him. Liability being admitted, the Trustee properly limited his evidentiary presentation to such evidence as necessary to enable the Court "to take an account or to determine the amount of damages." Fed.R.Civ.P. 55(b)(2).

### D. *Damages Attributable to Arjuna Diaz*

#### 1. *Lump–Sum Payment to Arjuna Diaz*

Pursuant to Paragraphs 44–46 of the Complaint, and as admitted by default, a $500,000 lump-sum payment for so-called "consulting fees" was paid to Diaz in April 1998, at a time when the Company was in a "precarious financial position and did not have the ability to make this payment," constituting a "wrongful payment" and waste of ITA's assets.

Through the competent and credible testimony of Hutchins upon his examination of the Company's underlying books and records, including the general ledger entries, bank statements, wire transfer requests, correspondence and memos, the Trustee has met his burden and established that the Company was damaged by the lump-sum payment to Diaz in the amount of $500,000. *See,* Transcript of December 2, 1999 Hearing at pp. 17–18. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $500,000 as a result of the foregoing lump-sum payment.

#### 2. *Unpaid Loans to Arjuna Diaz*

Pursuant to Paragraphs 45–46 of the Complaint, the Company made substantial loans to Diaz at a time when ITA was experiencing severe financial difficulties. As admitted by default, these loans, which remain unpaid, constituted a waste of corporate assets contributing to the financial weakening and ruin of ITA.

Through the competent and credible testimony of Hutchins based upon his examination of the Company's underlying books and records, including the general ledger entries, canceled checks, credit card statements, invoices, correspondence and memos, the Trustee has met his burden and proved that the Company was damaged by the unpaid loans to Diaz in the sum of $78,472.21. *See, id.* at pp. 19–21. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $78,472.41.

#### 3. *Funding of "ITA Asia"*

Pursuant to Paragraphs 41–43 of the Complaint, and as admitted by virtue of the default, one of the primary ways in which Diaz wasted the corporate assets of the Company was through the funding of an "ITA Asia" office and residence for Diaz in Singapore, expending over $600,000 in corporate funds on "ITA Asia" in 1996–98, without any business plan, evidence of business operations, customers, sales or revenue from ITA Asia.

Through the competent and credible testimony of Hutchins based upon his examination of the Company's underlying books and records, including contracts, lease agreements, correspondence, memos, general ledger entries, bank statements, canceled checks, and wire transfers, the Trustee has met his burden and proved that there was no business purpose for these expenditures and that the Company was damaged in the amount of $727,388 as a result of the unwarranted funding of an "ITA Asia" office. *See, id.* at pp. 21–23. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $727,388.

#### 4. *Payments to the Prahlad Foundation*

Pursuant to Paragraph 54 of the Complaint, and as admitted by virtue of the default, Diaz further contributed to the waste of ITA's assets by approving, permitting, or failing to prevent improper payments to a foundation for Sri Prahlad Chandra Brahmachari founded by Diaz.

Through the competent and credible testimony of Hutchins based upon his examination of the Company's underlying books and records, including the Articles of Incorporation, correspondence, memorandums, general ledger entries, canceled checks, wire transfer requests and bank statements, the Trustee has met his burden and proved that the subject payments were improper, were a waste of Company assets and that the Company was damaged in the amount of $199,877.79. *See, id.* at pp. 24–25. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $199,877.79.

### 5. Online Consulting Losses

Pursuant to Paragraphs 29–33 of the Complaint, and as admitted by virtue of the default, Diaz failed to cause the Company to monitor properly its relationship with a customer known as "Online," with the result that ITA overpaid Online in excess of $2,000,000 for calls that were not reimbursed to ITA from the telephone companies or "LECs." All such overpayments remain due and owing to ITA from Online, but are uncollectible because Online is in receivership.

Through the competent and credible testimony of Hutchins based upon his examination of the Company's underlying books and records, including correspondence, memos, meeting agendas, electronic files, "TSN (phonetically) star reports, IPBO, ITA, IPBO weekly reports," canceled checks, wire transfer statements and other ITA reports, the Trustee has met his burden and proved that Diaz failed to cause the Company to properly monitor its "Online" customer relationship resulting in an improper overpayment as alleged, and that the Company was damaged in the amount of $2,146,070.41. *See, id.* at pp. 25–29. Accordingly, the Court finds and concludes the Company was damaged in the sum of $2,146,070.41.

### 6. Payment to FSE Consulting

Pursuant to Paragraph 53 of the Complaint, and as admitted by virtue of the default, Diaz failed to use reasonable and ordinary care in establishing and implementing a rational system of internal controls, resulting in a payment of $750,000 in late 1998 to an entity called FSE Consulting ("FSE"). The records of the Company do not contain any contract or any written authorization for FSE to act on behalf of ITA's customers. Further, at the time ITA was unable to pay other authorized and valid obligations.

Through the competent and credible testimony of Hutchins, based upon his examination of the Company's underlying books and records, including bank statements and wire transfer requests, the Trustee has met his burden of proof and established that the Company was damaged in the amount of $750,000. *See, id.* at pp. 29–30. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $750,000.

### 7. IBS Contract Losses

Pursuant to Paragraphs 47–51 of the Complaint, and as admitted by virtue of his default, Diaz bears responsibility for ITA's waste of corporate assets in connection with the purchase of certain contracts from Interactive Billing Services, Inc., which are referred to in the Complaint as the "IBS Contracts." As alleged in the Complaint, these contracts caused the Company to incur significant monthly maintenance fees. Despite this fact, the officers and directors, including Diaz, failed to develop any reasonable plans or procedures for developing a customer base for the generation of revenue in connection with these contracts. In fact, they entered into a "special deposit agreement" related to those contracts which made billing through those contracts obviously and foreseeably unattractive to almost all of ITA's potential customers. As alleged in the Complaint, the Company suffered significant damages as a result of this waste of corporate assets.

Through the competent and credible testimony of Hutchins based upon his exami-

nation of the Company's underlying books and records, including the purchase contract, the IBS and the Lex Contracts, correspondence, memos, general ledger entries, canceled checks, invoices and wire transfer requests, the Trustee has met his burden and proved that the damages suffered by the Company as a result of the waste of corporate assets in connection with the IBS Contracts amounted to at least $334,731.14. *See, id.* at pp. 31–36. He further testified that the total damages suffered by the Company in connection with the IBS Contracts might be even higher than that total, but did not substantiate any greater amount. *See, id.* at p. 36. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $334,731.14 as a result of the waste of corporate assets in connection with the IBS Contracts.

### 8. *Excessive Payment to Entity Related to Morton Tauber*

Pursuant to Paragraph 54 of the Complaint, and as admitted by virtue of the default, Diaz contributed to the waste of ITA's corporate assets by approving or permitting exorbitant payments to the Tauber accounting firm and its affiliates that were not commensurate with the services received from ITA in exchange for those payments.

Through the competent and credible testimony of Hutchins based upon his examination of the underlying books and records of the Company, including correspondence, memos, canceled checks and invoices, the Trustee has met his burden of proof and established that the Company was damaged in the amount of $73,300 as a result of the foregoing excessive and unwarranted payments to the Tauber accounting firm and its affiliates. *See, id.* at pp. 36–39. Accordingly, the Court finds and concludes that the Company was damaged in the amount of $73,300.

At the conclusion of the December 2, 1999 hearing, the Trustee requested that the Court enter a final judgment against Diaz pursuant to Federal Rule of Civil Procedure 54(b), as incorporated by Federal Rule of Bankruptcy Procedure 7054. The total damages attributable to Diaz has been established by Plaintiff Trustee in the amount of $4,809,839.75. The Court concludes that the Trustee's request for entry of final judgment in accordance with Rule 54(b) will be granted, as there is no just reason for delaying the Trustee's collection efforts with respect to the liability of Diaz. Accordingly, it is

**ORDERED** that the Plaintiff's Motion for Default Judgment is hereby **GRANTED,** and it is

**FURTHER ORDERED** that judgment shall be entered in favor of the Trustee, and against Defendant Arjuna Diaz, in the amount of **$4,809,839.75,** plus post-judgment interest thereon as provided by 28 U.S.C. § 1961.

The clerk is directed to serve a copy of this order upon counsel for plaintiff, defendant Arjuna Diaz, counsel for all other defendants, and the United States Trustee.

IT IS SO ORDERED.